No. 13,308.

GILLIGAN *v.* BLAKESLEY.
(26 P. [2d] 808)

Decided September 25, 1933. Rehearing denied November 6, 1933.

Mr. FRED A. HARRISON, Mr. C. LaVERGNE HARRISON, for plaintiff in error.

Mr. OMAR E. GARWOOD, Mr. MILTON C. GARWOOD, Mr. GEORGE O. MARRS, for defendant in error.

*In Department.*

MR. JUSTICE BOUCK delivered the opinion of the court.

THE defendant in error, Alice Blakesley, recovered a judgment in the district court of Adams county against the plaintiff in error, Florence Gilligan, who brings the case here by writ of error. The action sounds in tort, being for damages on account of personal injuries.

Mrs. Gilligan is the owner of a building in Aurora, Colorado, the second floor of which is designed and customarily used for professional offices and family apart-

ments. She rented one of the suites on the second floor to a Dr. Crawford for use in his medical practice, as well as for living quarters. It was, of course, contemplated that this suite would be accessible to the doctor's patients. On August 30, 1931, about three months after taking sole and exclusive possession of the rooms, the doctor called to see Mrs. Blakesley at her mother's room in a Denver hotel, having been requested to make a medical examination of Mrs. Blakesley. Not carrying with him the proper instruments for the examination, he suggested that the two women accompany him in his automobile to the Aurora office suite, where Mrs. Blakesley could be examined. It was about 6:30 p. m. on a Sunday. Mrs. Blakesley and her mother had not had their evening meal. Informed of this, the doctor proposed that some foodstuffs be bought and that the three have lunch together in the suite, the medical examination to be made during the visit. The food was accordingly bought, and they drove to the doctor's office, arriving about eight o'clock. He left the suite on some business or other, and the two women proceeded to prepare the lunch in the back room, which, according to the doctor's testimony, was a room originally intended to be used—and, in fact, actually used—as a recovery room, and for examination. The room immediately in front of this room was the room constituting the doctor's living quarters.

In the rear wall of the back room there were no windows, but there was a full sized door having a glass pane in the upper half. Above it was a glass transom. Outside the door just described was a screen door which was fastened with a hook on the inner side. Between the two doors, near the floor, was a board about twelve inches wide, lying on its edge lengthwise and attached to the door frame along the bottom of the screen door. According to the plaintiff's testimony, she unwrapped the food they had brought and, seeing the back door, went to put the papers out on what she thought would be the

fire escape or back porch. She opened the door and un-
hooked the screen. Stepping out, she fell and landed on
a cement surface somewhat over twelve feet below.
There was neither stairway nor platform of any kind
outside the door, nor was there any guard or warning
other than the above-mentioned board.

Both parties ask that the case, now pending on appli-
cation for a supersedeas, be at this time considered and
decided on its merits.

1. The initial argument of the defendant is
that the verdict cannot stand because the complaint does
not state facts sufficient to constitute a cause of action.
This point was originally raised by general demurrer.
It is true that the complaint does not expressly say that
the dangerous situation which resulted in the injury ex-
isted at the time Dr. Crawford rented the premises from
the defendant. The contention, however, is not so per-
suasive as it might be if the defendant had by motion or
special demurrer sought to have .the supposedly inade-
quate complaint made more specific. We hold that under
the circumstances the complaint supplies enough of a
foundation on which to build a case. The very simplic-
ity of the basic facts, both as presented in the complaint
and as developed by the evidence, is a refutation of the
charge that the statement is fatally defective. So far
from failing properly to state a case against the defend-
ant (as the defendant claims it fails), the complaint al-
leges that ''defendant knowingly, negligently, and care-
lessly has permitted said dangerous condition [previ-
ously therein described] to exist for many months prior
to the happening of the accident causing the injury'';
and the evidence established the fact—without contra-
diction—that in relation to the room in question Dr.
Crawford's tenancy under the defendant as landlord be-
gan less than three months before the accident. The jury
had a right to infer, and they could not but infer, from
the evidence offered in support of the allegations in the
complaint, that the dangerous situation existed on the

premises at the time they were first rented to Dr. Crawford. It is also contended that two theories are intermingled, one apparently charging a nuisance and the other declaring upon simple negligence. If this be so, it does not make the complaint insufficient. Be it said that in this instance also a motion or special demurrer might well have been aimed against the supposed confusion in order that the plaintiff could if necessary clarify her pleading by amendment. When parties fail to employ these remedies intended by our Code of Civil Procedure to effect greater certainty and directness in pleadings, the courts will indulge in every reasonable presumption and inference to sustain the pleading which thus neither the opposing party nor the court has been given an opportunity to improve. For all these reasons we overrule the contentions based upon the alleged insufficiency of the complaint.

2. Counsel claim there was prejudicial error in the lower court's denial of the motion for a nonsuit. This motion was based upon four alleged grounds, namely:

(a) That the complaint was insufficient in not alleging the existence of a nuisance on the premises at the time the defendant rented them to Dr. Crawford, and in not alleging any duty or obligation by agreement or otherwise on the part of the defendant to repair the premises or maintain them in a safe condition during the doctor's tenancy. As already stated, the complaint sufficiently set out a cause of action. In addition to alleging facts from which negligence could properly be inferred, it set forth a nuisance which the evidence conclusively showed to have existed since long before the doctor's tenancy began. Counsel discuss the question whether the defendant had a contractual duty to repair the premises or maintain them in safe condition during the doctor's tenancy. That question is not involved. There is no issue here as to contractual rights or liabilities of the landlord or the tenant or those in privity with either of them. The issue is entirely one in tort.

(b) That the evidence failed to disclose such alleged contractual duty or obligation to repair or safely maintain. Since we above hold that such a duty or obligation is not involved, neither is the question whether the evidence discloses such duty or not.

(c) That the plaintiff was on the premises as a licensee, with the sole consequent duty on the part of the defendant to refrain from active, or wanton, negligence. The plaintiff was not a mere licensee. Whenever a person comes, either for professional examination, consultation or treatment, into the rooms rented to a physician for the purpose of being used as his professional office, the prospective patient is not only the invitee of the tenant, but virtually—because such use was contemplated— the invitee of the landlord. The evidence clearly showed the plaintiff to be such.

(d) That the plaintiff was guilty of contributory negligence. The evidence was conflicting. It did not necessarily show the plaintiff to have been guilty of contributory negligence. In other words, so far as this issue is concerned, the state of the evidence upon completion of the case in chief called for submission to the jury for decision.

It follows that there is no merit in any of the four grounds upon which the motion for a nonsuit was based. But another reason exists for sustaining the district court's ruling on the motion. The defendant proceeded with the introduction of evidence on her own behalf, hence she must be deemed to have waived the point.

3. A motion to direct a verdict in favor of the defendant was also denied, and such denial is assigned as error. It was based partly upon the above mentioned four grounds alleged in the motion for a nonsuit (which grounds the later motion adopted by a general reference thereto, and which must be held insufficient for this motion as they were for the other). It stated, however, one additional ground, namely, that the undisputed evidence shows the door situation to have been entirely safe. As

to this last mentioned ground, counsel are laboring under a misapprehension or oversight readily apparent from a perusal of the contradictory evidence before us. There was a sufficient amount of such evidence to entitle the plaintiff to go to the jury. No error was committed in refusing a directed verdict.

4. The defendant complains of two instructions that were given, No. 2 and No. 8. No. 8 will be dealt with first. The instruction is as follows: "The court instructs the jury: That in the event that you should find for the plaintiff, you should assess her damages in such sum as will reasonably compensate her for the injuries sustained. This will include all bodily pain and mental suffering which you find were the result of the injuries, and the amount incurred for necessary medical, surgical, hospital and nursing expenses, together with such damages for the impairment of the health of plaintiff as may be reasonable under all the circumstances, and you will also consider whether or not the injuries are of a permanent character, and if you find that the plaintiff has sustained permanent injury, you may include in your assessment of damages such sum as will compensate her for such permanent injury." The objections to the above instruction were two in number: (1) That the evidence shows Dr. Crawford to have been a joint tortfeasor and to have paid, or assumed liability for, a part of the damages claimed by the plaintiff (it being contended—without the citation of any authorities—that there can consequently be no recovery against the defendant); and (2)— also without citation of authority—that there was no proper evidence of any permanent injury because the mortality tables in §6537 of C. L. '21 were not introduced. Dr. Crawford testified, it is true, that he had paid, or arranged to take care of, certain expenses necessitated by the plaintiff's injuries. But the answer to this is that there is no issue raised by the pleadings, nor is there any evidence, that Dr. Crawford was a joint tortfeasor. Neither was it necessary to introduce the mortality

tables before permanent injury could be proved; for a litigant in a case like this may at his pleasure avail himself or not of their admissibility under the statute. We therefore find no merit in either objection, and consider that the instruction was properly given. Instruction No. 2 is as follows: "Where the owner of property leases it for a public or semi-public purpose, such as an office building for the use of doctors, or other professional persons, in treating such of the public as may come to them, the owner of such real property is under a duty to exercise reasonable care and keep said premises reasonably safe for such persons so visiting doctors or other professional persons renting offices in such office building, and where under such circumstances the owner of the property permits such a dangerous condition to continue, knowing that the same did exist, or by reasonable care and diligence ought to have known of such condition, and persons visiting said occupants of such a building for the purpose of obtaining professional services, are by reason of such negligence injured, the owner of the property is liable therefor." The defendant objects to this instruction on the ground that it is "too general and does not comply with the law as laid down in the case of *Colorado Co. v. Giacomini*," [55 Colo. 540, 136 Pac. 1039] and that the building in which the doctor's suite is situated is not a public or semi-public building within the meaning of the law. A careful reading of the Giacomini case, and an examination of the cases there cited and others, together with the reasons underlying them, convince us that the principle supported by those cases applies to the facts as alleged by the plaintiff, and that, under the circumstances here appearing, according to the better reasoning and the weightier authorities, the case was properly submitted to the jury.

5. Prejudicial error is claimed in the refusal of each of four instructions which the defendant tendered and the court refused to give. The first of these refused instructions, which defines and explains negli-

gence, would clearly have been cumulative when tested by the instructions given. Another attempted to deny the defendant's liability in relation to a stranger, but under the evidence here the plaintiff could not be considered a stranger. A third refused instruction undertook to define the defendant's responsibility to invitees; but, whether that part of the instruction be deemed good or bad, the instruction included also a definition and mention of licensees so worded as to have brought confusion to the minds of the jurors if it had been given. Under paragraph (c) of subdivision 2 above, we have dealt with this question in another connection. We believe that, under the evidence as it must necessarily have been interpreted by the jury, the plaintiff was an invitee and not a mere licensee. The given instructions, submitting the case, were correct, adequate and fair to the defendant. In fact, since they put the plaintiff's right of recovery squarely upon the ground of negligence, they were probably more favorable to the defendant than the latter deserved. According to respectable authority, a dangerous situation that amounts to a nuisance (as the one in the case at bar seems to have done), if created by the owner in the form of a palpable defect in the construction of a building, may render the owner liable irrespective of the question of negligence. 36 C. J. 225, §914. Compare note, 86 A. S. R. 515, 516. To require proof of negligence, as the district court did, may thus have redounded to the advantage—certainly not to the prejudice—of the defendant. The fourth and only other refused instruction would have been cumulative, and was also objectionable because it was incomplete and inaccurate, and would have unduly emphasized a portion of the specific evidence. The thought in counsel's mind could legitimately be—and doubtless was—brought out in argument to the jury, applying the legal principles, as expounded in the given instructions, to the evidence as viewed from the defendant's standpoint.

380

■■■■■■■ 6. Before leaving the subject of instructions, we refer to assignment eleven. This claims fatal error in the giving of instruction No. 3, though no exception or objection was preserved in connection therewith at the time it was given. A clerical mistake occurred by the trial judge's using the word "defendant" in connection with the subject of contributory negligence when it should have been "plaintiff." The mistake was plainly a mere misprision that could mislead no one. The subject was otherwise so fully and clearly covered that the jurors, as rational beings, could not fail to understand the true intent of what was said. Moreover, it is the duty of counsel to examine—or at least to listen to the reading of—the instructions at the time they are given; and by not detecting errors promptly and not calling the trial court's attention thereto, so as to enable the appropriate correction to be made, the point must ordinarily be deemed waived.

■■■■■ 7. Complaint is made that no foundation was laid for admission of evidence concerning permanent injury. We hold the contrary. The evidence on this point was properly received.

■■■■■ 8. In view of the foregoing discussion, the only question remaining that in our opinion requires mention is whether there was sufficient evidence to sustain the verdict. We think there was.

Judgment affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE HOLLAND concur.