[Civ. No. 10880. First Appellate District, Division Two.—June 15, 1939.]

ANNIE B. JOHNSTON, Appellant, v. BLACK COMPANY (a Corporation) et al., Respondents.

Archer Bowden and Burbank & Laumeister for Appellant.

Hartley F. Peart, Maurice J. Rankin, Gus L. Baraty, Howard Hassard and Robert M. Davis for Respondents.

STURTEVANT, J.—This is an action to recover damages for personal injuries. In her complaint the plaintiff named a number of persons, including one corporation. Summons was served on three of the natural persons. By stipulation of counsel the trial court instructed the jury to return a verdict in favor of the defendant Dr. Dorothy J. Starks. As to the defendants Dr. R. A. Powers and Virginia Huntington, his nurse, the cause was submitted to the jury and it returned a verdict in their favor. From the judgment entered on that verdict the plaintiff has appealed.

In the latter part of 1936, while residing at Palo Alto, the plaintiff became ill. She consulted Dr. Sox. He examined her and directed her to report to the office of Dr. Powers for an X-ray examination. Dr. Powers and Dr. Starks jointly occupied the same office. Miss Huntington was a nurse in attendance at the office. On the 19th day of January, 1937, the plaintiff went to the office of Dr. Powers, was ushered into a dressing room, directed to disrobe, and then to take a position on a fluoroscopic table. Dr. Powers was not present but Dr. Starks informed the plaintiff that she would act in his place. The fluoroscopic table was in a perpendicular position. At the bottom it had a foot rest. The plaintiff was directed to step upon the foot rest with her back against the table. She did so. Thereafter Miss Huntington commenced to operate the table to bring it to a horizontal position with the plaintiff upon it. While being so operated the mechanism of the table broke. As it did so Miss Huntington attempted to reverse the movement of the table. It did not respond to the switch but continued to move backward and the plaintiff was thrown backward off the table in such a manner that her neck and shoulders struck the wall and floor. In falling she suffered the injuries for which she sought to recover in this action.

Soon after the accident, A. E. Bush, a representative of the manufacturer, went to San Jose to investigate the cause of the accident. On the trial he was called as a witness by the defendants. He was shown photographs which he identified as being photographs of Dr. Powers' flouroscopic table in different positions. From that testimony it appears that the table, in ordinary language, could be termed a tilting table operated by gears which in turn are moved by electric power. At a point about midway in the length of the

table a shaft extends at right angles from side to side underneath the table. On the ends of the shaft, gears are attached. Through those gears and the shaft a tapering hole is bored. Into that hole is driven a tapering pin about a quarter of an inch in diameter. Above the head of the pin is a screw to prevent the pin from coming out if it gets loose. The gears are enmeshed in a heavy grease and are enclosed in a gear box. Mr. Bush testified that when he arrived at the office of Dr. Powers the table was in a trendle-bearing position or about thirty degrees down below normal. The foot end was up. A slight test disclosed that there was a break in the mechanism. By the use of pries he raised the table to a horizontal position and placed supports underneath. He then crawled under the table, took off the gear covering, and with a punch removed the pin. It was broken and the parts showed it was broken from crystallization.

The first point made by the plaintiff is that the evidence is insufficient to justify the verdict. She recites practically all of the evidence, then she claims that the doctrine of *res ipsa loquitur* indisputably applied. That, as the doctrine of *res ipsa loquitur* was applicable, plaintiff claims she was entitled to a verdict unless defendants produced evidence to rebut the *prima facie* case made by her and that the defendants did not do so. In reply the defendants earnestly contend they did introduce evidence rebutting the *prima facie* case made by the plaintiff. These conflicting contentions are addressed to different elements of the proof.

█ (1) The plaintiff contends the defendants made no examination of the table after the same was purchased. That contention is wholly at variance with the evidence of several witnesses introduced at the trial. However, as we understand her, the plaintiff's real contention is that the defendants had not, from time to time, caused the gear box to be taken off, the gears to be removed, the pin to be taken out of its socket and placed under an X-ray to determine if crystallization had occurred. The defendants reply that in the exercise of due care a physician and surgeon is not bound to go to such lengths in making a proper examination. That reply is well founded. The plaintiff was an invitee and as such the defendants were bound to exercise reasonable care to protect her from being injured. (*Mautino* v. *Sutter Hospital Assn.*, 211 Cal. 556, 561 [296 Pac. 76] ; *Micek* v. *Weaver-*

*Jackson Co.*, 12 Cal. App. (2d) 19, 21 [54 Pac. (2d) 768].) But, in the exercise of reasonable care, the defendants were not bound to make extraordinary examinations of the table. They were bound only to make ordinary examinations. (*Baddeley* v. *Shea*, 114 Cal. 1, 5 [45 Pac. 990, 55 Am. St. Rep. 56, 33 L. R. A. 747]; *Diamond* v. *Drew*, 17 Tenn. App. 488 [68 S. W. (2d) 955, 957]; *Warner* v. *Erie Ry. Co.*, 39 N. Y. 468, 474.) ■ (2) The plaintiff earnestly contends that Miss Huntington was an incompetent operator. She was called as a witness and testified to facts showing she had had several years of experience and was competent. The plaintiff says she had no license. What license a person needs to operate a fluoroscopic table, a barber chair, a Morris chair, or any other tilting chair, the plaintiff does not inform us. (3) The plaintiff further contends that Miss Huntington was negligent because she did not make a test of the apparatus before causing the plaintiff to take a position on the table. The plaintiff does not show what Miss Huntington neglected in that behalf. There was testimony that the table was used several times a day. The plaintiff had undergone other examinations on the same table, to wit, on January 8, 9, 13, 14, 15, 18, and then took her position on the table again on the 19th. What additional tests Miss Huntington should have made before placing Mrs. Johnston on the table the brief does not disclose. ■ (4) The plaintiff also claims that Miss Huntington operated the table in a negligent manner. That claim is based on these facts. As stated above the table was constructed to be operated by electric power. That power was controlled by a switch located in the side of the table near which Miss Huntington stood. When the plaintiff had taken her place on the table, Miss Huntington moved the switch for the purpose of bringing the table in position to make the X-ray examination. As the table was moving Miss Huntington heard the metal pin break. At the same time she noticed that the table did not move properly. She moved the switch in the opposite direction to bring the table back into its former position. It did not respond to the power, but continued to move backward and to dip toward the head. In so moving the switch the evidence did not disclose an act of negligence. On the contrary, the evidence was without conflict that after the pin broke the table was out of control and the movement of the switch had no effect whatever on its movements.

■ The plaintiff complains because the court gave certain instructions which she asserts were not correct statements of the law. However, as we view the record, it is clear those instructions were not prejudicial to her. As we have shown above, in presenting her case she relied on the doctrine of *res ipsa loquitur*. It was her contention that when she had shown that the fluoroscopic table, the thing which caused her injury, was under the management of the defendants, and the accident was such as in the ordinary course of things does not happen if those who have the management use proper care, an inference arose, in the absence of explanation by the defendants, that the accident was caused from a want of proper care. (*Judson* v. *Giant Powder Co.,* 107 Cal. 549, 556 [40 Pac. 1020, 48 Am. St. Rep. 146, 29 L. R. A. 718].) She introduced no direct evidence to prove the defendants were negligent. After she had rested the defendants took up the proof and introduced evidence to the effect that the fluoroscopic table was purchased about eight years before the date of the accident from a reliable manufacturer, that the table was of standard make, that many others were being used in the State of California and elsewhere and that some of them have been in use for about twenty-five years. The defendants' table was in daily use and sometimes was used three or more times a day. It was, at frequent intervals, oiled, cleaned, inspected, and minor repairs made thereon. Prior to the accident to the plaintiff nothing had occurred that indicated any weakness in or wear on the metal pin which broke. Prior to the moment of the accident the defendants had no notice whatever of any defect in the pin or in the table. In *Baddeley* v. *Shea,* 114 Cal. 1, at page 5 [45 Pac. 990, 55 Am. St. Rep. 56, 33 L. R. A. 747], the court states and quotes as follows: "In speaking of the liability of owners of private houses for the consequences of defects therein dangerous to invited visitors on lawful business, Mr. Wharton, in his book on Negligence, section 825, says: 'For the question, when such liability is mooted in reference to such a visitor, is whether the proprietor exercised in his house the care which good housekeepers are accustomed to exercise. What is such care? Certainly, when we recollect the great varieties of habit and taste in this respect, all we can ask is that the house, to those visiting it, should be free from those obvious defects of which an occupant, not an expert in mechanics, would be

cognizant. *Those latent defects which are either concealed in defective workmanship, or are incidental to the ordinary wear and tear of houses, are among those casualties which no man can avoid without the exercise of that extraordinary care and vigilance which the law does not impose.'* " (Emphasis ours.) True, that particular statement was addressed to houses but the cases cited on page 7 of the Baddeley case clearly show the rule is equally applicable to the appurtenances and furnishings of a house. Applying that rule to the facts in the instant case, it is clear the record contains no evidence that would have supported a verdict for the plaintiff. Having introduced the evidence above mentioned the inference on which the plaintiff relied was dispelled as a matter of law. (*Engstrom* v. *Auburn Auto. Sales Corp.,* 11 Cal. (2d) 64 [77 Pac. (2d) 1059].) In the cited case, having called attention to the difference between a presumption and an inference, on page 70 the court said: "On the other hand, an *inference* is dispelled as a matter of law when it is rebutted by clear, positive and uncontradicted evidence which is not open to doubt, even though such evidence is produced by the opposite side. (*Maupin* v. *Solomon,* 41 Cal. App. 323, 324–326 [183 Pac. 198]; *Martinelli* v. *Bond,* 42 Cal. App. 209 [183 Pac. 461].)" It follows that the evidence contained in the record would not support a verdict for the plaintiff whether the instructions complained of were technically correct or otherwise.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 15, 1939, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 14, 1939.