MRS. MICHELE GOLDMAN v. DR. ALBERT A. KOSSOVE AND DR. IRENE L. KOSSOVE.

(Filed 23 November, 1960.)

**1. Negligence § 37a—**

A mother taking her young son to a medical clinic for professional services is an invitee while on the premises.

**2. Negligence § 37b—**

An entrance or exit habitually used by invitees with the express or implied permission of the owner of the premises is within the scope of the invitation.

**3. Same—**

While the owner of the premises is not an insurer of the safety of his invitee, he is under duty to exercise due care to keep the premises, within the scope of the invitation, in a reasonably safe condition for use by the invitees, and to give them timely notice and warning of concealed perils known to the owner or ascertainable by him through reasonable inspection or supervision.

**4. Negligence § 37f—**

There is no presumption or inference of negligence from the mere fact that an invitee fell to her injury while on the premises, but in order to hold the owner liable in damages the invitee must establish negligence of the owner in failing to use due care to keep the premises in a reasonably safe condition or in failing to warn the invitee of hidden perils of which the owner knew or should have known in the exercise of reasonable inspection or supervision.

**5. Same—**

Evidence tending to show that an invitee, in stepping from the bottom step of the rear exit into grass some eight to twelve inches high, stepped into a hole concealed by the grass and fell to her injury, is insufficient to overrule nonsuit in the absence of evidence that the proprietors created or permitted the dangerous condition, or knew of its existence, or the length of time the hole had existed, since liability must be predicated upon actual or constructive knowledge of the proprietors of the existence of the dangerous condition.

**6. Negligence § 24a—**

The existence of negligence must be proven by facts leading to that conclusion, or by facts from which that conclusion may be inferred as a legitimate inference, and may not be established by facts raising a mere conjecture or surmise.

MOORE, J., dissenting.

RODMAN, J., joins in the dissent.

APPEAL by plaintiff from *Campbell, J.,* 23 May 1960 Regular Schedule B Civil Term, of MECKLENBURG.

Action for damages for personal injuries resulting from plaintiff stepping into a hole and falling.

From a judgment of involuntary nonsuit entered at the close of all the evidence, she appeals.

*Warren C. Stack and William E. Graham, Jr., for plaintiff, appellant.*
*Kennedy, Covington, Lobdell & Hickman for defendants, appellees.*

PARKER, J.  This is a summary of plaintiff's evidence, and of defendants' evidence favorable to her: Dr. Albert A. Kossove and Dr. Irene L. Kossove are husband and wife and physicians, who have practiced together for many years in the city of Charlotte. On 11 January 1956, and for 18 years prior thereto and subsequent thereto, they owned as tenants by the entirety a two-story house at 1530 Elizabeth Avenue in Charlotte, which was called Kossove Clinic and in which they maintained offices, etc., in their practice of medicine. There were three entrances to the Clinic, a front entrance on Elizabeth Avenue, a side entrance, and a rear entrance in the back, where there is a parking lot in which their patients are permitted to park their automobiles off the street. A driveway led from Elizabeth Avenue to the parking lot. The parking lot was covered with gravel and dirt, and there were trees, shrubs and grass around its edge.  ·

On 11 January 1956 plaintiff parked her automobile in the parking lot for the purpose of taking her four-year-old son to be examined by Dr. Albert A. Kossove in the Clinic. A dozen times prior thereto she had parked in the parking lot, and had entered the Clinic through the rear entrance. On this occasion she and her son used the rear entrance, and in order to get to the rear entrance she had to walk through about a four-feet area of grass eight to twelve inches high. There were four steps leading up to the rear entrance, and the grass was eight to ten inches high right by the steps. The grass was thick. As she walked into the Clinic through the rear entrance, she could not see what was underneath this grass. There was no path leading from the back steps to the parking lot.

After Dr. Albert A. Kossove had examined her little boy, she, with her son, walked out of his office and started down the hall to the rear entrance. Dr. Albert A. Kossove was walking with her, and said that her son's ear was better. He said nothing about her using the rear entrance. She started down the steps at the rear entrance, and as she stepped down the last step into the grass, half of her left foot went into a hole, and she fell down twisting her ankle. She was looking as she walked down the steps, and saw no hole. It was in the day-

time after lunch, and the visibility was good. She did not know how long the hole she stepped into had been there.

The first time she went to the Kossove Clinic she entered through the front entrance, and was taken to a little examining booth near the rear entrance. As she was leaving, Dr. Kossove was there with Mrs. Jones, an employee there, and Mrs. Jones said, "you know you can use the back door to get to the parking lot," and she did so. Many times before this occasion she had entered and left the Clinic through the rear entrance. She had stepped down the steps there into the grass at least 24 times before she fell, and had never seen a hole or depression there. Dr. Albert A Kossove was present a half dozen times, when she left by the rear entrance, and had never said anything about her using it. There were no signs in the Clinic notifying patients to use the front entrance only.

This Court said in *Pafford v. Construction Co.,* 217 N.C. 730, 9 S.E. 2d 408: "To constitute one an invitee of the other there must be some mutuality of interest. . . . Usually the invitation will be inferred where the visit is of interest or mutual advantage to the parties."

A person entering the professional office, or the premises thereof, of a physician for professional examination or treatment by the physician is an invitee. *Johnston v. Black Co.,* Cal. App., 91 P. 2d 921; *Gilligan v. Blakesley,* 93 Colo. 370, 26 P. 2d 808; *Reynolds v. John Brod Chemical Co.,* 192 Ill., App 157.

"In order to be an invitee or a business visitor it is not necessary that the visitor should himself be on the premises for the purpose of the possessor's business but it is sufficient that he be on the premises for the convenience or necessity of one who is on the premises for such purpose." 65 C.J.S., Negligence, p. 518.

In *Fortune v. R. R.,* 150 N.C. 695, 64 S.E. 759, it was held that a wife, who had accompanied her husband to defendant's station for the purpose of seeing him off as a passenger on defendant's train, was on defendant's premises by its implied invitation, and it was bound to exercise ordinary care for her safety.

In *Hamlet v. Troxler,* 235 F. 2d 335, it was held: Woman, who, while visiting daughter-in-law in defendant's hospital, was injured when she stepped into precipitous stairway leading to basement, by following directions of defendant's nurse who had permitted her to use toilet but had sent her to wrong door, was invitee, under North Carolina and Virginia law, at time of injury.

In *Cohen v. General Hospital Soc. of Connecticut,* 113 Conn. 188, 154 A. 435, the plaintiff went to the hospital for his wife, who had been a patient. The Court held he was an invitee.

"Where an invitee . . . has been intentionally or negligently misled into a reasonable belief that a particular passageway or door is an appropriate means of ingress or egress he is entitled to the protection of an invitee . . . while using such passageway or door. The duty of keeping the premises in a safe condition extends to ways of ingress or egress which, although not the proper ways, the owner of the premises permits customers to use without taking precautions to prevent such use. . . ." 65 C.J.S., Negligence, sec. 48(b).

In the instant case plaintiff carried her four-year-old son to the defendants' Clinic to be examined by Dr. Albert A. Kossove in his office in the Clinic. Dr. Albert A. Kossove told her, after he examined her little boy, her son's ear was better. Plaintiff's evidence viewed in a manner most favorable to her is sufficient to establish that her legal status at the time of her injury was that of an invitee as to that part of the premises of defendants where she fell and was injured.

Defendants owed to their patients, and those accompanying their patients on their premises for their convenience or necessity, a positive duty to keep the entry into and the exit from their Clinic, in which defendants maintained their professional offices or which entrances and exits, or any of them, such persons reasonably believed are held open to them by defendants as a means of access to, or egress from, their Clinic, in a reasonably safe condition for the use of their patients and those accompanying their patients for their convenience or necessity, and to give such persons timely notice and warning of latent or concealed perils known to defendants and not to them, or ascertainable by defendants through reasonable inspection or supervision. Defendants are not insurers of the safety of such persons on their premises, and in the absence of negligence there is no liability. *Fanelty v. Jewelers,* 230 N.C. 694, 55 S.E. 2d 493; *Garner v. Greyhound Corp.,* 250 N.C. 151, 108 S.E. 2d 461; 65 C.J.S., Negligence, p. 539.

No inference of actionable negligence on defendants' part arises from the mere fact that plaintiff suffered personal injury from a fall occasioned by stepping into a hole in the grass near the last step down as she walked out of the back entrance to the Clinic. *Fanelty v. Jewelers, supra.*

There is no evidence that defendants placed or permitted the hole to be near the back entrance to their Clinic, or that they knew anything about it. Plaintiff's evidence is that she had stepped down the steps there on the grass at least 24 times before she fell, and had never seen there a hole or depression. There is no evidence as to

how long the hole had been there, or what caused it to be there. The grass near the steps at the back entrance was thick and eight to ten inches high. Plaintiff contends that the fact that grass had grown around the hole to such an extent that it obscured it is "evidence from which the jury could find the hole had existed for a sufficient period to give constructive notice to defendants of its presence." The only description we have of the hole in the record is that half of plaintiff's left foot went in it. Plaintiff's contention rests on conjecture and surmise and inference drawn from inference. To carry her case to the jury "the plaintiff must offer evidence sufficient to take the case out of the realm of conjecture and into the field of legitimate inference from established facts." *Parker v. Wilson*, 247 N.C. 47, 100 S.E. 2d 258. Such an inference cannot rest on conjecture or surmise, which raises a possibility of its existence. *Sowers v. Marley*, 235 N.C. 607, 70 S.E. 2d 670. A resort to conjecture or surmise is guesswork, not decision, and "a cause of action must be something more than a guess." *Lane v. Bryan*, 246 N.C. 108, 97 S.E. 2d 411. In our opinion, the fact that thick grass eight to ten inches high was right by the steps at the rear entrance of the Clinic, and that plaintiff did not see the hole in the grass when she stepped on the grass, does not permit the legitimate inference that the hole in which plaintiff stepped had existed for a sufficient period of time to give constructive notice of its existence to defendants.

Considering the evidence in the light most favorable to plaintiff, it fails to show that defendants knew anything of the hole or that the defendants could have ascertained the hole was there before plaintiff stepped in it through reasonable inspection or supervision, and the evidence here would not justify a jury in finding that defendants had not exercised reasonable, ordinary or due care to keep the entrance to the rear of their Clinic reasonably safe for the use of plaintiff. The judgment below is

Affirmed.

MOORE, J., Dissenting. The evidence, when considered in the light most favorable to plaintiff, and the inferences to be reasonably drawn therefrom are, in my opinion, sufficient to make out a case of actionable negligence.

In the majority opinion the decision is made to turn on the following conclusion: "There is no evidence that defendants placed or permitted the hole to be near the back entrance to their clinic, or that they knew anything about it. . . . There is no evidence as to how long the hole had been there, or what caused it to be there." There

is the further conclusion that there is an insufficient showing that the hole had existed for a sufficient time to give defendants constructive notice of its existence. With these conclusions I disagree.

Defendant, Dr. Albert Kossove, testified that he and his co-defendant had practiced their profession in Charlotte for 20 years and that their clinic had been in this location for 18 years and that plaintiff had been coming to the clinic about a year. He stated further: "I never sowed any grass on that lot. As far as I recollect, it was the same grass that had been growing out there or volunteered since I bought the premises about 18 years ago. . . . During that 18 years I have had the grass cut or mowed or trimmed almost every week." Plaintiff testified: "When I stepped on the last step there was grass there and I stepped into the grass and the front part of my foot went into a hole . . . . I was looking down. I saw the grassy area. . . . I did not see the hole in which I stepped. I was looking but I did not see anything. There was high grass all around the step, . . . . I would say the grass was approximately eight to twelve inches high. . . . In answer to the question what portion of my foot went into the hole, which I testified about, I am pointing from the tip up to here, which I would think is approximately four to six inches. . . . I stepped from the last step to the ground and my foot went into a hole, but I did not see it because the grass was so high. . . . the grass was high and thick and rather dense around there. I could not see anything except the grass. . . . I had been up and down those steps and stepped on the grass immediately in front of the steps at least 24 times before this happened. . . . I never had gone up and down in the same spot. I never encountered or have seen anything. . . . The hole was opposite the left third of that lower step. . . . I did not get down and examine the hole at the time I got hurt. I measured it by the amount of foot that went in the hole. . . . I testified about four inches of my foot went in a hole approximately four to six inches, from this part to this; . . . I did not measure it. I can approximate it by the amount of my foot that went in the hole and I can tell you that it went all the way from the tip here, which would make a whole shoe, went in. I do know approximately how wide it was, because my entire shoe went in the hole part, my foot went in the hole, . . . It might have been deeper than four to six inches deep. It was as wide as my foot. Whether it was any wider than that I don't know."

Upon a motion to nonsuit, evidence should be taken in its natural and ordinary sense. It is certainly true that plaintiff's case may not rest on mere conjecture. By the same token the court should not

indulge in speculation in behalf of defendants. The evidence does not describe a freshly dug hole. It describes a hole larger than a woman's foot and 4 to 6 inches deep, overgrown and obscured by grass 8 to 12 inches tall. Grass does not grow in or around such a hole so as to obscure it in a brief period of time. The inference is inescapable that the hole had existed for a considerable period of time and defendants or their servants, who mowed and trimmed the grass, in the exercise of ordinary care could and should have discovered it.

The defendants had the duty to discover the hidden danger and warn their patients and other invitees of its presence and peril. It is negligence to fail to know what it is one's duty to know.

I vote to reverse.

RODMAN, J., joins in dissenting opinion.