JANIE P. PULLEY v. REX HOSPITAL

No. 387A89

(Filed 13 June 1990)

**1. Negligence § 52.1 (NCI3d)— hospital visitor as invitee**

A plaintiff who was visiting a patient in a hospital was a business invitee of the hospital.

**Am Jur 2d, Hospitals and Asylums § 35.**

**2. Negligence § 49 (NCI3d)— tripping on sidewalk—breach of duty—obvious condition**

Prior North Carolina cases do not establish a rule that a plaintiff can never state a valid case for recovery upon tripping on a sidewalk. Viewed in sum, our prior cases merely establish that the facts must be viewed in their totality to determine if there are factors which make the existence of a defect in a sidewalk, in light of the surrounding conditions, a breach of the defendant's duty and less than obvious to the plaintiff.

**Am Jur 2d, Premises Liability §§ 477, 646.**

**3. Negligence § 49 (NCI3d)— tripping on sidewalk—sufficient forecast of evidence for recovery**

The trial court erred in entering summary judgment for defendant hospital in plaintiff's action to recover for injuries sustained when she fell on the uneven sidewalk while walking toward the emergency and outpatient entrance to visit a pa-

PULLEY v. REX HOSPITAL

[326 N.C. 701 (1990)]

tient in the hospital where plaintiff's forecast of evidence would support findings by a jury that one section of the sidewalk was as much as three inches higher than the abutting section; plaintiff did not see the alleged three-inch rise in the sidewalk as a result of dim, dappled lighting; plaintiff's attention was diverted from the uneven sidewalk by low-hanging tree branches; plaintiff's attention and her path along the sidewalk were diverted by other pedestrian traffic; and people entering emergency rooms are frequently and foreseeably very distracted from their ordinary behavior. Genuine questions of material fact remained as to whether the combination of lighting, tree branches, and oncoming pedestrians made it reasonable for plaintiff to turn her attention away from the sidewalk and whether such a result should reasonably have been foreseen by defendant hospital.

**Am Jur 2d, Premises Liability §§ 477, 646.**

Justice MEYER dissenting.

Justice MARTIN dissenting.

APPEAL of right by the plaintiff pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 95 N.C. App. 89, 381 S.E.2d 892 (1989), affirming the entry of summary judgment for the defendant by *Bailey (James H. Pou), J.,* at the 6 June 1988 Non-Jury Civil Session of Superior Court, WAKE County. Heard in the Supreme Court on 13 March 1990.

*Kirk, Gay, Kirk, Gwynn & Howell, by Philip G. Kirk and Katherine M. McCraw, for the plaintiff appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Ronald C. Dilthey and Susan K. Burkhart, for the defendant appellee.*

MITCHELL, Justice.

The question we address is whether the Superior Court erred in entering summary judgment for the defendant Rex Hospital in this case. We conclude that the Superior Court did err. Accordingly, we reverse the decision of the Court of Appeals, which affirmed the Superior Court's judgment, and remand this case for further proceedings.

**PULLEY v. REX HOSPITAL**

[326 N.C. 701 (1990)]

Upon the defendant's motion for summary judgment, the Superior Court considered the parties' various pleadings, affidavits and depositions. The forecast of evidence favoring the plaintiff tended to show that on the evening of Sunday, 15 July 1984, the plaintiff Janie Pulley went to visit her mother who was a patient at the defendant Rex Hospital in Raleigh. At approximately 10:00 p.m., Pulley was walking along a sidewalk on the hospital grounds towards the hospital entrance used by "Emergency [and] Outpatient" patients; the main hospital entrance had already closed for the evening. Although Pulley had *left* the hospital building via this sidewalk before, she had never *entered* the hospital by walking along this sidewalk. The sidewalk was poorly lit, with dim, uneven illumination coming from several nearby lights, signs and windows. As she walked along the sidewalk a short distance from the hospital entrance, Pulley moved to her right to allow other pedestrian traffic to pass, then ducked to walk under several low-hanging tree branches which extended over the sidewalk. Pulley walked under the branches, then stumbled on an uneven portion of the sidewalk and fell face-forward, suffering injuries. The irregularity in the sidewalk was at an expansion joint, where two sections of the sidewalk join. Along the joint, the edge of one sidewalk section was as much as three inches higher than the abutting section.

The forecast of evidence favoring the defendant Rex Hospital tended to show that Pulley had traveled over the sidewalk several times prior to her accident. The walkway was well lit, and the tree branches did not overhang the walk, or Pulley was past the branches when she fell. The edge of the sidewalk section which Pulley tripped over was no more than one-quarter inch higher than the abutting section. The hospital frequently inspects its facilities and grounds for safety hazards, and would have discovered and corrected any hazard on the sidewalk. Some of the evidence favoring the defendant hospital came from depositions of the defendant's witnesses and some came from a deposition of the plaintiff herself.

Upon the forecast of evidence, the Superior Court entered summary judgment for the defendant Rex Hospital. The Court of Appeals affirmed, Judge Phillips dissenting. *Pulley v. Rex Hospital*, 95 N.C. App. 89, 381 S.E.2d 892 (1989). We reverse.

I.

This Court has repeatedly discussed motions for summary judgment under N.C.G.S. § 1A-1, Rule 56. For example:

By making a motion for summary judgment, a defendant may force a plaintiff to produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial or be able to surmount an affirmative defense. *Dickens v. Puryear*, 302 N.C. 437, 453, 276 S.E.2d 325, 335 (1981). "The party moving for summary judgment must establish the lack of any triable issue by showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Watts v. Cumberland County Hosp. System*, 317 N.C. 321, 322-23, 345 S.E.2d 201, 202 (1986); [*see*] *Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379 (1975). "[A]ll inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Dickens v. Puryear*, 302 N.C. at 453, 276 S.E.2d at 335, quoting *Page v. Sloan*, 281 N.C. 697, 706, 190 S.E.2d 189, 194 (1972). Upon a motion for summary judgment by a defendant, a plaintiff "need not present all the evidence available in his favor but only that necessary to rebut the defendant's showing that an essential element of his claim is non-existent or that he cannot surmount an affirmative defense." *Dickens v. Puryear*, 302 N.C. at 453, 276 S.E.2d at 335.

*Morrison v. Sears, Roebuck & Co.*, 319 N.C. 298, 300-01, 354 S.E.2d 495, 497 (1987). With specific regard to negligence cases, we have said that:

While our Rule 56, like its federal counterpart, is available in all types of litigation to both plaintiff and defendant, "we start with the general proposition that issues of negligence . . . are ordinarily not susceptible of summary adjudication either for or against the claimant, but should be resolved by trial in the ordinary manner." It is only in exceptional negligence cases that summary judgment is appropriate. This is so because the rule of the prudent man (or other applicable standard of care) must be applied, and ordinarily the jury should apply it under appropriate instructions from the court.

*Page v. Sloan*, 281 N.C. 697, 706, 190 S.E.2d 189, 194 (1972) (citations omitted).

## II.

As in any negligence case, the plaintiff's case here involved allegations that the defendant owed the plaintiff a certain duty,

that the duty was breached, and that the breach proximately and foreseeably caused the plaintiff injury. In its answer, the hospital denied negligence and, alternately, alleged as an affirmative defense that the plaintiff was contributorily negligent.

[1] The forecast of evidence tended to show that Pulley was at the hospital to visit her sick mother. Those visiting patients in a hospital are business invitees of the hospital. *Goldman v. Kossove*, 253 N.C. 370, 372, 117 S.E.2d 35, 37 (1960). Therefore, Pulley was an invitee, and the hospital owed her "a duty to maintain the premises in a condition reasonably safe for the contemplated use and a duty to warn of hidden dangers known to or discoverable by the [hospital]." *Branks v. Kern*, 320 N.C. 621, 624, 359 S.E.2d 780, 782 (1987) (citations omitted). However, it is also "the law in North Carolina that there is no duty to warn an invitee of a hazard obvious to any ordinarily intelligent person using [her] eyes in an ordinary manner, or one of which the plaintiff had equal or superior knowledge." *Id.* (citations omitted). To establish that the hospital breached its duty to her, Pulley thus will be required to show that the area in which she was injured was not in a reasonably safe condition *for its contemplated use*. Pulley will also have to show that the hospital either knew or should have known of the unsafe condition. Further, she may not recover if she knew of the unsafe condition or if it should have been obvious to any ordinary person under the circumstances existing at the time she was injured.

III.

Both the defendant and the Court of Appeals cite to several cases from the large body of North Carolina cases in which plaintiffs who tripped and fell on sidewalks failed to recover either because the existence of a defect in the sidewalk did not amount to negligence by the defendant, or because the plaintiff was contributorily negligent in not seeing or avoiding an obvious hazard, or both. *See, e.g.*, *Evans v. Batten*, 262 N.C. 601, 138 S.E.2d 213 (1964) (trip and fall over slight fault in wet sidewalk on clear day; plaintiff should have anticipated fault); *Falatovitch v. Clinton*, 259 N.C. 58, 129 S.E.2d 598 (1963) (per curiam) (plaintiff tripped over minor defect in sidewalk on clear day; no breach of duty by the defendant); *Murchinson v. Apartments*, 245 N.C. 72, 95 S.E.2d 133 (1956) (per curiam) (plaintiff tripped at night over "step" where street and sidewalk join); *Watkins v. Raleigh*, 214 N.C. 644, 200 S.E. 424 (1939)

(daytime trip and fall over fault in sidewalk, nearby trees cast shadows on sidewalk, but the plaintiff could have seen the fault had she looked; either the defendant breached no duty, or the plaintiff was contributorily negligent); *Houston v. Monroe*, 213 N.C. 788, 197 S.E. 571 (1938) (trip and fall at night over depression in crosswalk; either the defendant breached no duty, or the plaintiff was contributorily negligent). We do not find such cases to be controlling authority in the present case.

[2]   While we recognize that "[s]light depressions, unevenness and irregularities in outdoor walkways, sidewalks and streets are so common that their presence is to be anticipated by prudent persons," *Evans v. Batten*, 262 N.C. at 602, 138 S.E.2d at 214, none of our prior cases—singularly or in their totality—establish a rule that a plaintiff can never state a valid case for recovery based upon tripping on a sidewalk. Viewed in sum, our prior cases merely establish that the facts must be viewed *in their totality* to determine if there are factors which make the existence of a defect in a sidewalk, in light of the surrounding conditions, a breach of the defendant's duty and less than "obvious" to the plaintiff. Such factors may include the nature of the defect in the sidewalk, the lighting at the time of the accident, and whether any other reasonably foreseeable conditions existed which might have distracted the attention of one walking on the sidewalk. *See Frendlich v. Vaughan's Foods*, 64 N.C. App. 332, 337, 307 S.E.2d 412, 415 (1983).

IV.

Upon its review of the record, the Court of Appeals concluded that:

> Ms. Pulley's own account of the conditions surrounding her fall establish that she could not recover on her claim. First, Ms. Pulley testified at her deposition that the branches overhanging the sidewalk did not prevent her from looking at the sidewalk, and that she "had already passed the tree limb [and was walking upright] before [she] stumbled." She further stated that "nothing obscur[ed] her view of the sidewalk."
>
> . . .
>
> Second, Ms. Pulley testified at the deposition that the section of the sidewalk where she fell was illuminated by canopy lights, ground lights, and pole lights around the driving circle. She also admitted that when she returned two hours later

to the spot where she fell, "there was enough light at this time [about midnight] to see the sidewalk condition." We are convinced by this testimony and by our review of the photographic exhibits showing the lighting conditions as they existed at the time of the fall that the light was ample to allow Ms. Pulley to walk in safety. . . .

Finally, Ms. Pulley, who had been on that section of sidewalk many times in the past, admitted that she was not looking at the sidewalk as she walked, and that "had [she] been focusing [her] full attention on the sidewalk, [she] would have seen the unevenness." Under these circumstances, we are constrained to hold that Ms. Pulley's own contributory negligence entitled Rex Hospital to judgment as a matter of law.

*Pulley v. Rex Hospital*, 95 N.C. App. 89, 91-92, 381 S.E.2d 892, 894 (1989) (brackets in original).

[3] Conflicting in part with the evidence summarized by the Court of Appeals, the plaintiff's verified complaint contained, among others, the following factual allegations:

7. That a portion of said sidewalk was raised, causing it to be uneven with the portion of the sidewalk upon which Plaintiff was walking.

8. That the Defendant maintained inadequate lighting in the sidewalk area, making it impossible for the plaintiff to see the raised portion of the sidewalk.

9. That Plaintiff, while walking on said sidewalk, had to duck under the low hanging branch and then stumbled over the raised portion of the sidewalk, which she was unable to see because of the poor lighting conditions, and fell face forward upon said sidewalk.

These allegations, when taken with similar factual allegations in the plaintiff's affidavits, which were not entirely negated by her somewhat ambivalent deposition testimony, raise genuine questions of material fact. Those questions concern the condition of the sidewalk, the adequacy of the sidewalk lighting, and the effect of the nearby tree on sidewalk pedestrians. There was evidence that where the two sections of the sidewalk joined, one section was as much as three inches higher than the abutting section. Other evidence tended to show that as a result of dim, dappled

lighting, the plaintiff did not see the alleged three-inch rise in the sidewalk. From the forecast of evidence, we conclude that a reasonable juror might find that the plaintiff's attention was diverted from the uneven sidewalk by low-hanging tree branches, so that she did not see the rise in the sidewalk. Additionally, the forecast of evidence would support the same juror in finding that this result was reasonably foreseeable by the defendant.

Although not raised in the pleadings, there was also evidence tending to show that both the plaintiff's attention and her path along the sidewalk were diverted by other pedestrian traffic. While the plaintiff had a duty to look where she was walking, that duty did not require her to walk along with her eyes constantly focused at her feet. Indeed, there is evidence in this case that if the plaintiff had only been looking toward her feet, she would have walked into both low-hanging tree branches and oncoming pedestrians. The plaintiff admitted that she had "regained her composure" after ducking under the overhanging tree branches before she fell. Nevertheless, genuine questions of material fact remain as to whether the combination of the lighting, the tree branches, and oncoming pedestrians made it reasonable for the plaintiff to turn her attention away from the sidewalk, and whether such a result should reasonably have been foreseen by the defendant hospital.

We also note that a reasonable juror, in considering whether the defendant breached its duty to the plaintiff and whether the plaintiff was exercising ordinary care in watching where she was walking, might consider a fault in a sidewalk leading into a hospital emergency room quite differently from an identical fault in an ordinary city sidewalk. A reasonable juror could believe that people entering emergency rooms are frequently and foreseeably *very* distracted from their ordinary behavior.

## V.

While we make, of course, no comment upon the plaintiff's chance of succeeding in this action, the forecast of evidence does create a triable question of whether the defendant breached its duty to maintain its premises in a reasonably safe condition. Further, the forecast of evidence does not establish as a matter of law that the defect in the sidewalk was known to the plaintiff or "obvious" under the conditions existing at the time she fell or that she was contributorily negligent. The Superior Court thus

erred in entering summary judgment for the defendant, and the Court of Appeals erred in affirming that judgment.

The decision of the Court of Appeals is reversed. This case is remanded to the Court of Appeals for its further remand to the Superior Court, Wake County, for proceedings consistent with this opinion.

Reversed and remanded.

Justice MEYER dissenting.

The majority reverses the Court of Appeals' affirmance of the trial judge's entry of summary judgment for the defendant on the ground that the Court of Appeals "appears not to have given proper weight to the factual allegations in the plaintiff's verified complaint," which the majority finds, when taken in conjunction with the plaintiff's affidavits, created a genuine issue of material fact. I disagree.

The only thing we have in the record before us from the plaintiff herself is her verified complaint and the results of her testimony upon deposition taken by defendant. Plaintiff furnished no personal affidavit of her own in response to defendant's motion for summary judgment. The allegations in the plaintiff's complaint as to the negligent acts of the defendant are largely refuted in her deposition testimony.

In her complaint, plaintiff alleges that the lighting was inadequate, "making it impossible for the Plaintiff to see the raised portion of the sidewalk," and that the "lighting in the area was so inadequate as to make the uneven sidewalk a hidden peril." On deposition, however, she testified:

> In the area of where the accident occurred, the lighting sources that illuminate this area consists of lighting from the overhead lights in the ceiling of the overhang at the emergency room doorway, the sidewalk lights that are spaced around the sidewalk and the pole lights around the driving circle. [And later in her deposition:] The overhead lighting is the main source of illumination of this section of the sidewalk.
>
> . . . .

PULLEY v. REX HOSPITAL

[326 N.C. 701 (1990)]

. . . When I came back out later that night with my brother, I saw the uneven section of the sidewalk. There was enough light at this time [about midnight] to see the sidewalk condition.

. . . .

. . . When my brother and I went back out to look at the sidewalk, there was enough lighting for me to see this unevenness.

With regard to the overhanging tree branches that allegedly distracted her, plaintiff alleged in her verified complaint that she "had to duck under the low hanging branch and then stumbled." In her sworn deposition, plaintiff said:

I moved to the right and ducked down to miss the tree limbs; I raised back up and took a couple of steps when I stumped my toe and stumbled. . . .

. . . .

When I tripped and had my accident, I had already passed from under the branches and I had regained my composure. The tree was to my right and behind me. The branches were hanging at the corner of the building. When I actually tripped, I was beyond the overhanging portion of the tree. I had ducked under the branches earlier and I was now standing upright when the accident occurred. I had regained my posture and I had actually passed the area where I had to duck under the branches.

. . . .

I am not contending that the tree limb of the tree kept me from looking at the sidealk [sic]. I had already passed the tree limb before I stumbled.

Plaintiff further testified on deposition, *inter alia*, that:

I did not see the raised sidewalk until later that night when my brother pointed it out to me.

. . . .

. . . I have seen other sidewalks where one section is raised above another due to either settlement or from tree roots. All you have to do is walk over any sidewalks that have been laid for any length of time and you will find uneven

## PULLEY v. REX HOSPITAL

[326 N.C. 701 (1990)]

sidewalks. This is something I have encountered before. . . . I never did see the unevenness. As to why I didn't see the uneven section of the sidewalk, this is probably because there were a lot of people on the sidewalk in this area and I wasn't looking down at my feet. The people that came out of the emergency room were walking on the outside or the left side of the sidewalk and I was walking on the right side. As I was walking along the righthand side of the sidewalk, there was nothing obscuring my view of the sidewalk. . . .

. . . .

. . . At this time I was looking in front of me. I have no recollection of ever that evening specifically of looking on the sidewalk. When I later went out at midnight with my brother, I looked and I saw the unevenness of the sidewalk. . . .

. . . .

Had I been looking at the sidewalk as I was walking, I don't know whether or not I could have seen the unevenness. If I had been focusing my full attention on the sidewalk, I would have seen the unevenness.

Thus, as to plaintiff's contributory negligence, her own sworn testimony on deposition establishes, without contradiction, that (1) she never saw the raised sidewalk before she fell; (2) a raised place in the sidewalk was not unexpected, and she had encountered them before; (3) plaintiff was not looking down to see where she was placing her feet; (4) nothing obstructed her view of the sidewalk; (5) plaintiff does not remember ever once on that evening looking at the sidewalk; and (6) the unevenness was visible to her if she had looked, and she could have seen it if she had focused on where she was walking.

Plaintiff may not rely on inconsistencies in the allegation of her verified complaint and her own sworn testimony on deposition to create a genuine issue of material fact. The majority opinion of this Court, relying largely on allegations of plaintiff's complaint that are refuted by her own testimony upon deposition, manufactures a genuine issue of material fact where none exists. The trial judge correctly allowed summary judgment for the defendant. The majority opinion of the Court of Appeals is well reasoned, and I vote to affirm it.

Justice MARTIN dissenting.

Believing as I do that the trial judge correctly allowed the defendant's motion for summary judgment, I dissent from the majority opinion.

The reasons stating the basis for my dissent are well stated in the persuasive, scholarly majority opinion of Judge Becton in the Court of Appeals, concurred in by Judge Lewis. That opinion is reported in 95 N.C. App. 89, 381 S.E.2d 892 (1989).