***********
The Full Commission has reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Decision and Order of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Commission and the Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Issues for resolution are as follows:
 a. Whether any named employee of defendant was negligent in the events of March 19, 2007;
 b. Whether plaintiff was contributorily negligent; and
 c. Whether plaintiff is due any damages.
4. The record includes stipulated exhibits 1 and 2, plaintiff's exhibits 1-10, and defendant's exhibits 1 and 2. The deposition of Dr. Kurtz was also admitted into the record.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On July 17, 2007, plaintiff filed an Affidavit with the Industrial Commission alleging that she sustained damages as the result of defendant's negligence in Wilson, North Carolina. Plaintiff amended her Affidavit to name as negligent state employees Jimmy Hawley, Tyler Gardner, Robby Stancil, and Bill Bass.
2. On March 19, 2007, plaintiff was driving her automobile east on Kenan Street, and she stopped at the red light controlling the intersection with Raleigh Road, a one-way street in Wilson, North Carolina. The area was a construction zone with bright orange traffic control markings indicating a detour for motorists along the route. When the light facing her turned *Page 3 
green, plaintiff turned right onto Raleigh Road, turning into the left-hand lane of the one-way street.
3. Defendant was engaged in major reconstruction of Raleigh Road and had begun tearing out asphalt due to a pavement failure. In the left-hand lane, defendant Department of Transportation had cut a hole in the pavement initially about 18 inches deep and six feet wide. Defendant's employees had back filled the hole with screening material, so that the hole was about eight inches deep on March 19, 2007.
4. Raleigh Road had barrels going down the centerline dividing the left side from the right, due to the construction on Raleigh Road. At the intersection of Raleigh Road and Kenan Street, there was a sign on the curb indicating that the street was closed, with an arrow pointing right.
5. Plaintiff testified that she thought she was being directed into the left lane by the arrows and by the way the barrels were set out. Plaintiff believed that the barrels were placed so as to guide her into the left lane.
6. When plaintiff turned right, she proceeded for a short distance, and then her car fell into the hole in the pavement. Plaintiff was traveling approximately 25 miles per hour at the time of the accident.
7. Immediately prior to this incident, another car had turned right off Kenan Street onto Raleigh Road, driven into the left lane of travel and also had fallen into the hole. That driver had driven his car from the hole, abandoned his car, and then fled the scene.
8. Jimmy Hawley is currently defendant's Maintenance Engineer for Johnston County, but at the time of the accident was Assistant District Engineer in Nashville, which covered maintenance activities in Nash and Wilson Counties. Mr. Hawley was the supervisor of *Page 4 
the Raleigh Road construction project and of the work site that was the scene of this accident. As part of his duties, Mr. Hawley surveyed the entire route periodically to make sure that traffic control was in place as it should be. Mr. Hawley testified that worksites such as the one involved in this incident are required to be marked according to defendant's guidelines. He described the intersection as follows, when asked the proper way to mark off the intersection:
 The way we had it before the car knocked them out of the way. At the intersections, again, it's — you have the entire lane closed off. At those intersecting streets, you've got to put cones or barrels. In this case, we used cones. You just mark off the street — the lane that is closed with a simple taper with cones to show that that lane is blocked off and is not to be entered.
 . . . But anyone approaching the intersection from Kenan Street should have been able to see that they had to cross over the right lane that was entirely open. It should have been easy to determine which lane to go in.
9. Mr. Hawley had driven through the accident site approximately two hours prior to the accident and observed that all of the appropriate signs and barriers for a construction and repair area were in place.
10. Immediately prior to the two accidents, Tyler Gardner, a transportation technician/inspector for defendant, had driven through the work area and observed that all of the appropriate signs and barriers were in place according to defendant's policy and procedure. Mr. Gardner's vehicle was traveling on the one-way street in front of both the first and second cars. He was at a stoplight when the first car went through the work site and did not actually see the car hit the hole, but he saw the vehicle in the left-hand lane. Within minutes Mr. Gardner came back to check on the first car and saw that plaintiff had subsequently driven into the hole. There was no time for Mr. Gardner to replace any barriers between the time the first car hit the hole and *Page 5 
plaintiff's accident. Mr. Gardner believed that the first car knocked the barrels out of the way before plaintiff's accident.
11. A witness, Jennifer Whitley, who lives immediately in front of the area where the accident occurred, testified that barrels had been placed in front of the cutout hole earlier in the day, but at the time of plaintiff's accident were no longer in place.
12. Witness Will Farris testified that he saw plaintiff's accident occur as he was waiting at the red light at the intersection of Kenan Street and Raleigh Road next to plaintiff. Mr. Farris testified that the left lane into which plaintiff turned appeared to be open. Mr. Farris testified that the sign and the barrels led plaintiff into the left lane and that there were no barrels in front of the hole.
13. Both Ms. Whitley and Mr. Farris testified that a driver would not have been able to see the cutout due to the lighting and the coloring. Neither Ms. Whitley nor Mr. Farris could describe the accident scene prior to the first car's accident.
14. Following plaintiff's accident, some of the barrels and cones which had marked the site immediately prior to the two accidents were displaced. Jimmy Hawley secured the work site in order to prevent other vehicles from entering the left lane.
15. Debbie Leonard, defendant's Division Safety Engineer, testified as an expert witness in accident reconstruction. Ms. Leonard stated that, in her expert opinion, given the conditions under which the accident occurred, including plaintiff's speed, the warning signs of a construction site, and the distance from the intersection to the cutout, plaintiff should have had time to perceive the cutout and come to a stop before hitting it.
16. Plaintiff experienced muscle spasms and back pain following the wreck. She sustained a head injury which gave her headaches and temporary cognitive problems. *Page 6 
17. Plaintiff initially treated with Dr. Colin Kurtz, a chiropractor, first seeing him on March 20, 2007. Dr. Kurtz had previously treated her and knew of her health history. Dr. Kurtz testified that plaintiff was injured in the wreck.
18. Plaintiff also treated with Dr. Kerrie-Anne Heron, her primary medical care physician, first seeing her on March 27, 2007.
19. Dr. Kurtz sent plaintiff to Wilson Medical Center for a CT scan on March 28, 2007 and an MRI on April 4, 2007.
20. Dr. Kurtz reviewed the CT scan and MRI, as did Dr. Heron, for the treatment of plaintiff's injuries.
21. Both Dr. Kurtz and Dr. Heron took plaintiff out of work. She was cleared to return to work on April 20, 2007.
22. Plaintiff alleged in her Affidavit and testified at trial that she sustained damages as a result of the accident, including physical injury.
23. Although conflicting evidence was offered, the Commission finds that defendant followed established policies and procedures in marking the work site with the appropriate signs and barriers, including cones and barrels. As a result defendant's named employees were not negligent in their duties and plaintiff did not sustain any injuries as the result of any negligence on the part of the named employees.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 7 
1. The North Carolina Tort Claims Act permits individuals to sue State departments or agencies for injuries caused by the negligence of State employees. A plaintiff must show that injuries were sustained that were the proximate result of a negligent act of a named State employee acting within the course and scope of his employment. N.C. Gen. Stat. § 143-291. The terms of the Tort Claims Act must be strictly construed. NorthwesternDistrib., Inc. v. N.C. Dept. of Transp., 41 N.C. App. 548,255 S.E.2d 203, cert. denied, 298 N.C. 567, 261 S.E.2d 123 (1979).
2. Under the provisions of the Tort Claims Act, negligence is determined by the same rules applicable to private parties. Bolkir v.N.C. State University, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988).
3. In order to recover on a civil claim for negligence, a claimant must prove: (1) the existence of a duty to him; (2) a breach of that duty by the defendant (the named employees thereof in a tort claim); (3) injury sustained; and (4) that the injury sustained was a proximate result of the breach of duty. Pulley v. Rex Hospital, 326 N.C. 701,392 S.E.2d 380 (1990).
4. Given that no duty owed to plaintiff was breached by any named defendant, plaintiff has failed to prove any negligence on the part of any named officer, employee, involuntary servant, or agent of the State while acting within the scope of his or her office, employment, service, agency, or authority that proximately caused plaintiff an injury. N.C. Gen. Stat. § 143-291 et seq.
 ***********
Based on the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER *Page 8 
1. Under the law, plaintiff's claim should be and is hereby DENIED.
2. Each party shall bear its own costs.
This 24th day of June, 2009. S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1