The undersigned have reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Lorrie L. Dollar and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the Opinion and Award except for the minor modification to Finding of Fact (16) and the additions to the Order Section.
Plaintiff has moved the Full Commission to reopen the record for submission of additional evidence. After careful consideration, plaintiff's 30 May 1995 Motion for Additional Evidence is hereby DENIED.
Before the Full Commission, defendant withdrew its 14 June 1995 Motion for Sanctions.
* * * * * * * * * * * * * * *
EVIDENTIARY RULING
Following the hearing before Deputy Commissioner Dollar, the depositions of Dr. James D. Kindl and Dr. Anita K. Lindsey were submitted into evidence. All objections raised therein are ruled upon in accordance with the law and this Opinion and Award.
* * * * * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties in an Industrial Commission Form 21, which was approved by the Commission on 29 November 1993, and at the hearing on 10 May 1994 as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and an employment relationship existed between the parties on 16 December 1992, which is the date of the compensable injury sustained by plaintiff.
2. Defendant was non-insured.
3. Plaintiff's average weekly wage was $115.38 which yields a weekly compensation rate of $76.15. Plaintiff was paid temporary total disability compensation from 16 December 1992 through 27 May 1993.
4. Judicial Notice was taken of the following, upon agreement of the parties:
a. Form 18, filed 22 July 1993; and
 b. 16 September 1993 letter from plaintiff's counsel to defendant's counsel.
5. The following documents were stipulated into the record:
 a. Plaintiff's Exhibit (1)-Photographs of plaintiff's chest, taken in February of 1994;
b. Plaintiff's Exhibit (2)-Check dated 16 July 1993;
c. Plaintiff's Exhibit (5)-Consent Order;
 d. Plaintiff's Exhibit (6)-Certificate of Corporate Name;
 e. Defendant's Exhibit (1)-19 April 1994 EMS Bill; and
 f. Defendant's Exhibit (2)-9 pages of business receipts.
6. The issues for determination are:
 a. Whether plaintiff is permanently and totally disabled;
 b. What medical compensation should be afforded to plaintiff as a result of the compensable injury;
 c. Whether plaintiff is entitled to permanent partial disability compensation for damage to internal organs and/or scarring;
 d. Whether plaintiff is entitled to attorney's fees and costs;
 e. Whether plaintiff is entitled to a 10% penalty for defendant's failure to pay pursuant to the Form 21; and
 f. Whether defendant's must pay a fine as required under G.S. § 97-94.
* * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. On 21 March 1990, BGS of Greensboro, Inc., filed articles of incorporation with the Office of the Secretary of State to operate convenience stores, appliance repair business, and other businesses. Officers of the corporation were Harry Bruce Hayes, president, Stephen G. Hayes, Vice-President, and Sherry M. Hayes, Secretary-Treasurer. Among businesses operated by BGS were a number of convenience stores.
2. On 16 December 1992, BGS operated a convenience store in Greensboro, doing business as Tote-A-Poke. This store was operated by Harry Hayes and his wife Sherry Hayes.
3. On 16 December 1992, plaintiff was a sixty-six (66) year-old male who had been retired for approximately six (6) years. Plaintiff had worked off and on for defendant BGS at the Tote-A-Poke for approximately fifteen (15) years, with plaintiff having been a friend of Mr. Hayes' father for a number of years.
4. Plaintiff left school in the fifth grade, and after military duty, he had worked as a short order cook. Since November 1979, plaintiff had worked on a somewhat regular basis with defendant-employer for three days per week. Plaintiff's duties involved stocking shelves, operating the cash register, signing vendor invoices, paying vendors, and sweeping the store. Plaintiff's work history with defendant was termed one of friendly animosity, in that plaintiff would work for a while then get mad and quit. He also had a pattern of quitting around vacation time; however, because of plaintiff's relation with Mr. Hayes' father, Mr. Hayes would always rehire plaintiff when plaintiff was ready to go back to work.
5. On 16 December 1992, plaintiff sustained an admittedly compensable injury when he was stabbed in the abdomen during an armed robbery attempt. As a result of the stabbing, plaintiff sustained a laceration to his liver and an injury to the hepatic artery and epigastrium. Plaintiff was treated at Moses Cone Hospital by general surgeon, Dr. Anita Lindsey.
6. Dr. Lindsey opined that the liver wound was superficial in nature, and required no surgical repair as it would heal on its own. She placed sutures in the artery, and on 24 December 1992, plaintiff was released from the hospital. On 19 February 1993, Dr. Lindsey repaired an incisional hernia which plaintiff developed. On 8 March 1993, Dr. Lindsey placed plaintiff on light duty, with no lifting for four (4) weeks.
7. On 1 April 1993, Dr. Lindsey released plaintiff to return to full duty. Dr. Lindsey subsequently noted plaintiff had no permanent physical impairment. She did express a belief that plaintiff would likely have long term psychological problems related to the assault. However in deposition testimony, Dr. Lindsey explained that plaintiff would have a normal apprehension about the assault, but that he did not require psychological treatment and that this would not prevent him from working.
8. Treatment and testing performed by Dr. Lindsey on 18 February 1993 and 10 March 1993 were not related to the compensable injury.
9. Dr. James Kindl, plaintiff's family doctor, saw plaintiff for follow-up visits related to the compensable injury on 29 December 1992, 4 January 1993, 11 March 1993, and 8 April 1993. Other visits to Dr. Kindl were related to plaintiff's gastritis and stomach problems which preexisted the stabbing, and which were related to plaintiff's history of smoking and heavy alcohol consumption.
10. Plaintiff returned to work during the week of 25 January 1993, and at that time, he requested that Mr. Hayes pay him in cash, as he was hoping to receive funds from the victim assistance program. Mr. Hayes paid plaintiff in cash.
11. The plaintiff worked four (4) hours per week from 25 January 1993 until the hernia surgery, and following the surgery, plaintiff resumed working twelve (12) to (14) hours per week.
12. Plaintiff was paid $300.00 after the injury by Mr. Hayes for the period from 16 December 1992 to 27 March 1993. Plaintiff was paid $609.20 for the period of 1 April 1993 to 27 May 1993.
13. Mrs. Hayes wrote a check on the business account for $68.92 on 16 July 1993, to plaintiff to pay bills of $14.83 to Community Anesthesia, $25.36 for ambulance service, and $28.73 to Greensboro Diagnostic Center. Plaintiff explained that he would prefer to pay the bills himself, as the Victim Assistance officer had advised him to pay the bills directly in hopes that he would be reimbursed by that program. Mr. and Mrs. Hayes repeatedly told plaintiff to give them his bills so they could be paid.
14. Despite giving the $68.92 check to plaintiff for bills, Mrs. Hayes learned in March of 1994 that plaintiff had not paid the bills. Plaintiff admitted had not paid the bills. Plaintiff admitted he used the money for other things. She then contacted the various medical providers directly for bills. In March and April of 1994, Mrs. Hayes paid these bills, as well as bills to Greensboro Surgery. Mrs. Hayes also learned of a Medicare lien, which she has made an agreement to pay over a four (4) year period.
15. At the hearing, plaintiff initially contended he had never returned to work after the injury. However, he then admitted that he had asked to be paid in cash, that he had keys to the store, and that he had worked after the 16 December 1992 injury. Plaintiff then contradicted himself, stating that he had only been hanging around the store, and that his wife had been working. This testimony is not accepted as credible. Plaintiff later argued that he had worked more than four (4) hours per week before the hernia surgery. He denied signing vendor invoices; however, later admitted that he had signed them.
16. Plaintiff worked thirty (30) hours during the week of 16 March 1993, he reported to work two (2) hours late and was mad. Plaintiff argued with Mr. Hayes, and said he didn't have to work. On 27 March 1993, plaintiff came to the store, again angry and at that time he quit due to reasons unrelated to his injury.
17. Mr. Hayes offered plaintiff his job back in March, April, and October of 1993. However, plaintiff refused to return to his job.
18. At the hearing, plaintiff asserted that he was not working because of his scar, and on the witness stand, he pulled up his shirt to expose his chest. While plaintiff does have clearly visible scars on his chest, there was no evidence in the record that he had applied for or been offered any employment which would require him to expose his chest while working, particularly in light of his prior experience as a short order cook and convenience store clerk.
19. Defendants had previously carried workers' compensation coverage when they operated a grill at the store and had five (5) employees. However, they had been erroneously informed that they need not include themselves in counting the number of employees for purposes of coverage. Since plaintiff's injury, defendant secured coverage.
* * * * * * * * * * *
Based on the foregoing findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The burden of proving each and every element of compensability is on plaintiff. Harvey v. Raleigh Police Dept., 96 N.C. App. 28,384 S.E.2d 549, cert. denied, 326 N.C. 706,388 S.E.2d 454 (1989).
2. Plaintiff has failed to prove by competent evidence that he was unable to work after 27 May 1993. Dr. Lindsey released plaintiff to return to full duty on 1 April 1993. The record reflects that in fact from the week of 25 January 1993 through 24 March 1993, plaintiff had returned to work, was observed by customers to be working, and was working as a cashier at the convenience store. Plaintiff left work on 27 March 1993, after arguing with Mr. Hayes, at which time plaintiff told Mr. Hayes he would no longer work there. At no time did the plaintiff tell Mr. Hayes that he was unable to work due to fear or due to any injuries sustained in the compensable injury of 16 December 1992.
3. Plaintiff failed to prove by credible evidence that any reasonable effort was made to obtain other employment. Russell v.Lowes Produce Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993), clearly establishes that the burden of proving disability rests on plaintiff to show that he is unable to earn the same wages he had earned prior to the injury in the same or other employment. In this case, plaintiff contends that he looked for jobs but no one was hiring. However, he did not name specific employers contacted, the and type of jobs sought, or the time period within which he looked for work. His testimony is specifically not accepted as credible.
4. Plaintiff's refusal to return to his job at Tote-A-Poke was unjustified. G.S. § 97-32 mandates that an injured claimant shall not be entitled to any compensation where he has refused suitable employment unless the Commission finds the refusal to be justified. Therefore, he is not entitled to additional compensation.
5. Defendant is entitled to a credit of $68.92 for medical bills paid.
6. Defendant is liable for medical care provided by Dr. Lindsey, except that they are not liable for the 18 February 1993 and 10 March 1993 testing and treatment, as these visits were not causally related to the 16 December 1992 injury.
7. Defendant is liable only for the 29 December 1992, 4 January 1993, 11 March 1993, and 8 April 1993 visits to Dr. Kindl. Other treatment was for conditions which pre-existed or were unrelated to the compensable injury.
8. Plaintiff is not entitled to any compensation after 27 March 1993, and for any funds paid, defendant is entitled to a credit for said funds.
9. Plaintiff is not entitled to compensation under G.S. §97-31 (24), as he retains no permanent injury to his liver. Although plaintiff's Form 33 also requests an award for damage to the lungs, there was no evidence of any lung injury as a result of the 16 December 1992 injury.
10. Plaintiff is not entitled to compensation for the scar on his chest, pursuant to G.S. § 97-31 (22), as the scar on his chest is not visible and no evidence has been offered by plaintiff to suggest that the scar in any way renders him not employable. If plaintiff returned to work as a short order cook or a cashier, his employer would require the wearing of a shirt, which would completely cover the scar. There is no evidence in the record that plaintiff, now a sixty-eight (68) year old man, has pursued or been offered any new type of employment which would require him to expose his chest in a display as he did in this hearing.
11. Pursuant to G.S. § 97-94, defendant failed to insure this business under the Workers' Compensation Act requires that a penalty be imposed of $50.00 per day for each day of such refusal or neglect, until the same is corrected.
* * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Plaintiff's claim for total disability benefits is and under the law must be DENIED.
2. Plaintiff's claims for benefits under G.S. § 97-31 (22) and (24), are and under the law must be DENIED.
3. Defendant is entitled to a credit of $68.92 for payments to plaintiff for medical bills as enumerated in this opinion. Defendant is likewise entitled to a credit for any medical bills paid to Dr. Kindl and Dr. Lindsey for treatment not causally related to the compensable injury.
4. Each side shall pay its own costs, except that defendant shall pay an expert witness fee of $185.00 to Dr. Anita Lindsey.
* * * * * * * * * * * * * * * *
ORDER
IT IS ORDERED that pursuant to G.S. § 97-94 (b), defendant shall pay a fine of $50.00 per day per week for each day of refusal or neglect to secure workers' compensation coverage, from 16 December 1992 until coverage was obtained on 26 February 1994, an amount equal to $21,850.00. However, this fine is hereby REMITTED on the condition that defendant pay plaintiff's future medical expenses related to his 16 December 1992 injury by accident along with plaintiff's Medicare obligation. These payments shall be made promptly by defendant as they arise. In the event defendant fails to do so, the fine shall be immediately reinstated and the matter will then be referred to the Office of the Attorney General of North Carolina for enforcement.
 S/ _________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _________________________ DIANNE C. SELLERS COMMISSIONER
S/ _________________________ COY M. VANCE COMMISSIONER