The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner D. Bernard Alston. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Worker's Compensation Act.
2. An employer-employee relationship existed between the plaintiff and the defendant at the relevant time.
3. The defendant is a duly qualified self-insurer, with Hewitt Coleman and Associates serving as a third party administrator of workers' compensation plan.
4. The parties further stipulate and agree that the following documents are a part of the evidentiary record in this matter:
 a. The medical records for the plaintiff relative to his treatment for certain problems with his knees.
 b. Payroll records to be used to calculate the plaintiff's average weekly wage.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing the plaintiff was a 33-year-old male. The plaintiff has a high school education. The plaintiff's work experience includes electrical work and the installation of heating and air conditioning systems.
2. The plaintiff began his employment with the defendant on or about February 5, 1989. The plaintiff's job duties included unloading and moving canisters of gas. The plaintiff moved the canisters, which weighed from 75 pounds when empty, to 300 pounds when full, with the use of his hands and feet. The plaintiff used his hands primarily to guide the canisters and both feet to keep the canisters in motion. The plaintiff would achieve his aim by tilting the canister over on its bottom edge and using the force of his foot to set the canister in motion while holding the top of the canister with his hands.
3. The plaintiff began to experience pain in his right knee and on or about June 22, 1992, felt his right knee pop. On said date the plaintiff went to the emergency room of Baptist Hospital because of his pain.
4. The plaintiff subsequently sought treatment at the Orthopedic Clinic of Baptist Hospital. The plaintiff began his course of treatment with Dr. Monte Hunter of the said clinic on July 1, 1992.
5. Dr. Hunter's initial diagnosis was right knee pain with synovitis. Dr. Hunter prescribed a neoprene sleeve for the plaintiff's right knee together with a course of anti-inflammatory medications.
6. The plaintiff returned to Dr. Hunter on July 7, 1992 complaining of pain to his left knee. Dr. Hunter diagnosed the plaintiff as having left pallelofemoral disease and synovitis. The doctor's prescribed course of treatment for the plaintiff was substantially the same for the plaintiff's left knee as for the plaintiff's right knee.
7. A MRI dated August 4, 1992 revealed intrameniscal degeneration of the posterior horn with questionable chondromalacia patella of the right knee as well as evidence of medical suprapatellar plica of the left knee.
8. On August 26, 1992, the plaintiff was first seen by Dr. Walton W. Curl for a pre-operative evaluation. Dr. Curl saw the plaintiff because Dr. Hunter was concerned about the persistence of the plaintiff's symptoms. Dr. Curl's initial assessment was that the plaintiff had bilateral knee synovitis and symptomatic plica. However, due to the persistence of the plaintiff's symptoms and Dr. Hunter's concern that the plaintiff may have some meniscal damage, Dr. Curl determined to perform bilateral knee arthroscopic debridements.
9. On September 1, 1992, the plaintiff underwent bilateral knee arthroscopies with bilateral partial synovectomies and left knee plica excision.
10. The plaintiff sustained a ten percent (10%) disability to his left lower extremity and ten percent (10%) disability to his right lower extremity.
11. There is insufficient evidence to determine that the plaintiff sustained an injury by accident arising out of and in the course of his employment.
12. There is insufficient evidence to determine that the plaintiff contracted an occupational disease as a result of his employment with the defendant.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The plaintiff did not sustain an injury by accident arising out of and in the course and scope of his employment on June 22, 1992. N.C. Gen. Stat. § 97-2(6).
2. The plaintiff did not contract an occupational disease as defined by N.C. Gen. Stat. § 97-53(13).
3. The burden of proving each and every element of compensability is on the plaintiff. Harvey v. Raleigh PoliceDepartment, 96 N.C. App. 28, 384 S.E.2d 549, cert. denied,326 N.C. 706, 388 S.E.2d 454 (1989).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. The plaintiff's claim must under the law be and the same is hereby DENIED.
2. Each side shall bear its own costs.
FOR THE FULL COMMISSION
 S/ _______________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ______________________ DIANNE C. SELLERS COMMISSIONER
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER
CMV/cnp/mj 9/26/96