* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and are subject to governance by the North Carolina Workers' Compensation Act.
2. The employee-employer relationship existed at all times relevant herein. *Page 2 
3. The defendant-employer was insured by American Protection Insurance Company at all times relevant herein.
4. The plaintiff's average weekly wage is $871.50, yielding a compensation rate of $581.03.
5. At the hearing before the Full Commission, plaintiff and defendants stipulated to the admission of additional medical records and photographs into evidence.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-six years old. She completed the twelfth grade with some additional training as a Certified Nursing Assistant.
2. Plaintiff began working for Becton Dickinson Company as a floater on January 3, 2000. As a floater, plaintiff was responsible for running other employees' machines while they were on break. Additionally, plaintiff was responsible for stocking the machine lines with the materials needed for the next shift. To stock the machine lines, plaintiff had to go to a warehouse several times per day to get the needed materials.
3. Plaintiff alleges that on Tuesday, June 13, 2000, while she was working in the warehouse she felt an itch on the side of her abdomen. Plaintiff did not see a spider or any other insect when she developed the itch. Plaintiff was able to complete her shift; however, when she took a shower that evening, she noticed that there was a bump on her abdomen in the area that was itching. *Page 3 
4. When plaintiff returned to work the next day, Wednesday, June 14, 2000, she reported the incident to her manger and allowed him to feel the affected area of her abdomen. Plaintiff's manager instructed plaintiff to go to the doctor.
5. On Wednesday, June 14, 2000, plaintiff saw Dr. Arnett Coleman at Metropolitan Durham Medical Group. Dr. Coleman's assessment was "? Brown Recluse Spider Bite." Dr. Coleman's medical note from that visit indicates plaintiff reported that a knot had been "present since Monday (2 d[ays])." Plaintiff was referred to Dr. John Daniel, a general surgeon in Durham.
6. Plaintiff saw Dr. Daniel later in the day on June 14, 2000. Plaintiff told Dr. Daniel that she did not know whether she was bitten by a spider or not and thought she may have been bitten by a mosquito. Dr. Daniel found a small abscess on plaintiff's right upper abdomen. Plaintiff chose not to have the abscess aspirated, which would have allowed Dr. Daniel to try to identify the etiology of her symptoms. Plaintiff was instructed to apply compresses and take an antibiotic.
7. Dr. Daniel saw plaintiff on five occasions between June 14, 2000 and July 12, 2000 during which time her abscess healed after being incised and drained. When she completed a course of antibiotics, plaintiff was released from Dr. Daniel's care on July 12, 2000.
8. Almost four years later, on April 14, 2004, plaintiff returned to Dr. Daniel having been seen a few weeks earlier at Durham Regional Hospital for a recurrent abscess on her abdomen. Dr. Daniel recommended excising of the entire abscess as plaintiff's abscess probably recurred due to the presence of a foreign body such as an insect stinger. *Page 4 
9. With regard to the cause of plaintiff's right upper abdomen condition, Dr. Daniel testified that it is his opinion that plaintiff "had some type of insect bite" but that he is unsure whether the bite was from a spider, mosquito, or some other type of insect.
10. The product being manufactured at the defendant-employer's facility where plaintiff worked was a healthcare device, which is governed by the Food and Drug Administration as well as the Industrial Standardization Organization for manufacturing processes. Robert Rowell, business team leader for defendant-employer testified that sanitation and quality control standards for such facilities as the one where plaintiff worked are higher than those facilities manufacturing non-medical devices. Under such standards, the warehouse is swept several times per week and entry and exit into the facility through the warehouse is limited.
11. Because of the higher sanitation and quality control standards, the defendant-employer's facility where plaintiff worked performs monthly pest extermination, including extermination in the warehouse. In addition, permanent insect traps are strategically placed outside the facility and glue sticks are utilized inside the facility, including at the dock doors to the warehouse.
12. Ginny Martin, an Occupational Health Nurse for defendant-employer, testified that there are approximately 255 employees at the facility where plaintiff worked. She reviewed accident logs that are kept in accordance with OSHA regulations dating back to 1998 and found no reports of insect bites.
13. Dr. Daniel was unable to provide an opinion on whether plaintiff would have been more likely to be bitten by a spider or insect at work as opposed to elsewhere in the community. *Page 5 
14. The greater weight of the evidence fails to show what type of insect, if any, bit plaintiff at work.
15. The greater weight of the evidence fails to show that plaintiff's employment with defendant-employer exposed her to a greater risk of injury by an insect bite or sting than that of the general public.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. To be compensable, an insect sting must be an injury by accident which arose out of and in the course of the employment. N.C. Gen. Stat. § 97-2(6); Minter v. Osborne Co., 127 N.C. App. 134, 487 S.E.2d 835
(1997) disc. review denied 347 N.C. 401, 494 S.E. 2d 415. Plaintiff has the burden of proof to show that the insect sting was an injury that arose out of and in the course of his employment. Harvey v. RaleighPolice Dep't, 96 N.C. App. 28, 384 S.E. 2d 549, cert. denied,326 N.C. 706, 388 S.E. 2d 454 (1989). In cases involving insect bites, the "increased risk" test is applied to determine whether an injury arose out of employment. This test requires a showing that the employment peculiarly exposed an employee to a risk of injury greater than that of other persons in the community. Minter, supra.
2. In the case at bar, plaintiff has failed to prove by the greater weight of the evidence that she suffered an insect sting at work, what type of insect stung her, or that she was at an increased risk of being stung than a member of the general public. Minter v. Osborne Co.,supra.
 * * * * * * * * * * * *Page 6 
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is HEREBY DENIED.
2. Each side shall pay is own cost.
This the 20th day of April, 2007.
 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BUCK LATTIMORE CHAIRMAN
 S/___________________ PAMELA T. YOUNG COMMISSIONER *Page 1