***********
The undersigned have reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further *Page 2 
evidence, or rehear the parties or their representatives. The Full Commission adopts the Decision and Order of Deputy Commissioner Glenn with modifications.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. All the parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Tort Claims Act. This matter came to be heard pursuant to Plaintiffs' Affidavit filed with the North Carolina Industrial Commission on December 18, 2003.
2. On November 3, 1987, Mr. Randall Barnett, a registered sanitarian employed by the Person County Health Department, approved plaintiffs' application and issued a permit for plaintiffs to install a septic system on the unimproved Lot 49 of Oak Pointe subdivision on Hyco Lake in Person County, North Carolina. The permit is a sewage system improvement permit, which denotes that the property had been approved for a sewage treatment system for a three (3) bedroom home and set out the size of the septic tank, pump tank, and nitrification line along with other requirements, and it was specific to Lot 49 of Oak Pointe Subdivision. Plaintiffs relied upon the issuance of the improvement permit for the purchase of Lot 49 of Oak Pointe Subdivision.
3. Reasonably relying on the approved permit, plaintiffs entered into a purchase agreement with Mark and Sandra Wheeler, the owner of Lot 49 of Oak Pointe Subdivision on Hyco Lake, to purchase Lot 49 of Oak Pointe subdivision for a purchase price of $57,000.00. As *Page 3 
part of the purchase agreement the parties stipulated that the property was perkable. Plaintiffs paid $225.00 for title examination fee, $114.00 for the title insurance premiums, $8.00 for recording fee, and a $30.00 permit fee to the Person County Health Department. Plaintiffs planned to build their residence on Lot 49 after obtaining the requisite funds.
4. Thereafter, plaintiffs caused certain improvements to be made to the property which included some clearing and building or installation of a driveway or roadway which required placement of rock and some grading.
5. In October 1990, plaintiffs commenced construction of the wastewater system. A partial septic system was installed by Jimmy Lewis for which plaintiffs paid $1,750.00.
6. In January 1995, plaintiffs also caused a boathouse to be constructed for the contract price of $25,000.00 of which they paid $24,000.00. Plaintiffs paid the sum of $2,192.00 to K.D. Poole Clearing and Hauling for clearing work and placement of some gravel on the property. Plaintiffs paid to American Trucking for crush and run payments of $464.00 and $169.89. Plaintiffs also paid the sum of $229.10 to Mayo Farms for stone. Plaintiffs paid to Oak Pointe Maintenance Fund for road paving $3,800.00 (2 payments of $1,900.00).
7. Plaintiffs did not initially seek to build a residence on the property even though they had purchased the property for the purpose of ultimately building a residence until the year 2000, when they made application to the Person County Health Department be allowed to construct a residence on the property and to be allowed completion of the septic field.
8. In July 2000 the Health Department re-evaluated Lot 49 and denied plaintiffs' request for a new permit, finding that the soil did not meet the standards required for a septic system. A permit could not be issued to allow plaintiffs to construct and place the sewage treatment facility on the property which would allow them to construct their home. Plaintiffs *Page 4 
were first notified of this denial by a letter dated July 3, 2000 from Ms. Clayton, who was the supervisor of Person County Health Department sanitarians. This letter of denial also notified plaintiffs of their rights to both formally and informally appeal Ms. Clayton's denial.
9. Plaintiffs filed both a formal and an informal notice of appeal within the thirty (30) days they were given to do so. As a result, negotiations continued between plaintiffs and defendant as to whether there was anything that could be done to cause Lot 49 of Oak Pointe Subdivision to come into compliance so that defendant could issue an improvement permit to allow the construction of plaintiffs home. In November 2000, the Health Department evaluated Lot 49 again and concluded that the soil did not meet the standards for an on-site septic system.
10. On February 13, 2001, defendant directed that a backhoe be used to evaluate the soil. One of the last acts being the digging up of the partial sewage treatment system that had been installed by Mr. Lewis so that defendant could be satisfied as to what had in fact been placed in the ground. Present was Mr. Fred Smith, Mr. Mike Cash, and Ms. Clayton. Mr. Fred Smith being an employee of North Carolina Department of Environment and Natural Resources employed as Regional Soil Scientist and Mr. Mike Cash and Ms. Clayton being sanitarians and agents by both the North Carolina Department of Environment and Natural Resources and Person County Health Department. After their review of what was present on Lot 49 and what it would support, defendant determined that a conventional septic sewage treatment unit was not workable on plaintiffs' lot. Defendant made suggestions and gave plaintiffs two (2) potential options as to how it could be rectified to resolve the problem.
11. Plaintiffs hired some consultants so they could determine what if any sewage treatment system could be placed on the lot that would meet defendant's requirements. Plaintiffs hired Duane K. Stewart and Associates, who came up with a sand filter system that would meet *Page 5 
the requirements as established by defendant, but as a part of the system it discharged treated waste water that would flow from the system into Hyco Lake.
12. Progress Energy is the owner of an easement that is immediately adjacent to and runs completely around Hyco Lake. This easement required plaintiffs to get the permission of Progress Energy so that they could discharge the treated waste water across said easement and into the lake. After numerous attempts plaintiffs were advised by Progress Energy by a notice dated August 29, 2001 that they could not allow a discharge over their established easement.
13. Plaintiffs did not learn that they could not improve the property until they received the denial from defendant in July 2000. However, the denial was not finalized until the appeals process had run its full course which was not until defendant issued a final denial by letter dated February 14, 2001 denying plaintiffs' request for an improvement permit. It was not until August 29, 2001 when plaintiff's were notified by Progress Energy that they could not discharge waste water over its easement that plaintiffs' cause of action arose.
14. Plaintiffs filed their complaint in this matter on December 18, 2003, within three (3) years of the last act giving rise to their claim.
15. Defendant is required by law to issue or deny a permit for the installation of any and all waste water treatment units. This act is specific to person and/or property. Each permit specifically sets out the property it is applicable to and that it is for a specific person or specific property. Defendant has a special duty to exercise reasonable care in the issuance of permits to landowners.
16. Defendant has offered no evidence that plaintiffs were contributorily negligent.
17. Defendant is charged with the responsibilities and duty to determine what property can and can not be developed with the use of a sanitary sewage treatment facility *Page 6 
located on said property and that is a duty that is owed to each individual that makes the request for said determination. Defendant failed to properly make that determination because it failed to adhere to the rules that are promulgated by Department of Environment and Natural Resources for the determination of whether an improvement permit should or should not be issued.
18. Mr. Barnett while acting as a sanitarian for defendant, issued a permit to allow the improvement of Lot 49 of Oak Pointe subdivision and it was later determined by Ms. Clayton, Mr. Mike Cash, and Mr. Fred Smith that said permit was improperly issued and should not have been issued. However, plaintiffs had relied upon the permit to purchase and improve Lot 49 of Oak Pointe subdivision.
19. On December 7, 2000 Lot 49 of Oak Pointe subdivision was appraised at $125,000.00 assuming full utility. However, based upon the revocation of the improvement permit, the marketability of the lot was reduced by 70%. On July 11, 2007, the appraised value Lot 49 of Oak Pointe subdivision was $300,000.00 assuming that the property meets all state and local requirements for residential building. The value of the property on July 11, 2007 without the ability to obtain an improvement permit was $70,000.00 to $80,000.00. This represents an approximately 73% — 77% reduction in value. Therefore the Full Commission finds that the proper amount of damages based upon the diminution in value as a result of defendant's negligence is $220,000.00.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In a tort action against a State department or agency as defendant, plaintiffs must file their claim within three years after accrual. N.C. Gen. Stat. § 143-299. A cause of action for *Page 7 
property damage under N.C. Gen. Stat. § 143-299 does not accrue until physical damage to plaintiffs' property becomes apparent or ought to have reasonably became apparent to plaintiffs, whichever occurs first. N.C. Gen. Stat. § 1-52(16). In this case, the statute of limitations did not begin to toll until an injury became apparent or should have become apparent. Plaintiffs continued their efforts and negotiations with defendant to resolve the problems with the wastewater system in order to obtain a permit to build their home through February 14, 2001 when defendant confirmed that plaintiffs' property was not suitable for the installation of a septic system. It was not until this time that plaintiffs were officially on notice that they would not be able to obtain the requisite permit to construct the septic system in order to build their home. As plaintiffs filed their complaint with the North Carolina Industrial Commission on December 18, 2003, plaintiffs' claim is not barred by the statute of limitations.
2. Plaintiff's claim under the North Carolina State Tort Claims Act is not barred by a statute of repose. Feierstein v.N.C. Dept. of Environ. and NaturalResources, ___ N.C. App. ____,690 S.E.2d 558 (2010)(unpublished).
3. Plaintiffs' claim is not barred by the public duty doctrine. N.C. Gen. Stat. § 143-291, et seq.
4. The North Carolina Tort Claims Act permits individuals to sue State departments or agencies for injuries caused by the negligence of State employees. A plaintiff must show that the injuries sustained were the proximate result of a negligent act of a named state employee acting within the course and scope of his employment. N.C. Gen. Stat. § 143-291. Under the provisions of the Tort Claims Act, negligence is determined by the same rules applicable to private parties. Bolkhir v. NC State Univ.,321 NC 706, 709, 365 SE2d 898, 900 (1988). *Page 8 
5. In order to recover on a civil claim for negligence, a claimant must prove: (1) the existence of a duty; (2) a breach of that duty by the defendant (the named employees thereof in a tort claim); (3) injury sustained; and (4) that the injury sustained was a proximate result of the breach of duty. Pulley v. RexHospital 326 NC 701, 392 SE2d 380 (1990).
6. In this case, Mr. Barnett was acting within the scope and course of his duty as a sanitarian for the Person County Health Department and as such he was an agent of defendant, Department of Environment and Natural Resources. Mr. Barnett owed plaintiffs a duty of care in making a proper assessment of plaintiff's lot before issuing an improvement permit. Mr. Barnett breached that duty of care by negligently issuing a sewage system improvement permit to plaintiffs in 1987. As a direct and proximate result of defendant's negligence plaintiffs were damaged and are entitled to recover $220,000.00 based upon the diminution in value of plaintiff's property. Huberth v. Holly,120 N.C. App. 348, 462 S.E.2d 239 (1995).
7. Defendant has failed to show that plaintiff was contributorily negligent. N.C. Gen. Stat. § 97-86.2.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Defendant shall pay to plaintiffs the sum of $220,000.00.
2. Defendant shall pay the cost of this matter including plaintiffs' expenses.
This the 31st day of March 2010.
 S/___________________ *Page 9 
STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ DANNY L. McDONALD COMMISSIONER *Page 1