***********
The undersigned have reviewed the prior Decision and Order based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Accordingly, the Full Commission affirms the Decision and Order of Deputy Commissioner Glenn.
 *********** EVIDENTIARY MATTERS
At the hearing before the Deputy Commissioner, Mr. Ricky Oxendine was called as a *Page 2 
witness and testified. Plaintiff contends that the Deputy Commissioner erred when he did not allow into evidence the pretrial deposition transcript of Mr. Oxendine. Consistent with Rule 32(a) of the North Carolina Rules of Civil Procedure, the Full Commission affirms the ruling of the Deputy Commissioner on this issue, and the pretrial deposition transcript of Mr. Oxendine is not admitted into evidence.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at the hearing as:
 STIPULATIONS
1. All the parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this case. All parties are bound by and subject to the North Carolina Tort Claims Act. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of any party.
2. On February 18, 2003, there was a meeting in support of the Lumbee Federal Recognition and the Federal Tobacco Buyout at the Southeastern Agricultural Center on Highway 74 in Lumberton, Robeson County, North Carolina.
3. Plaintiff attended the meeting as a member of the delegation from the town of St. Pauls, North Carolina. An estimated 750 people attended to hear Senator Elizabeth Dole, Representative Mike McIntyre, and others speak.
4. At the end of the program, guests were invited and allowed to come onto the stage to greet Senator Dole and Representative McIntyre. *Page 3 
5. The facility was owned and operated by the North Carolina Department of Agriculture. The stage was assembled and setup by employees of Defendant.
6. The issues to be determined are as follows:
 a. Whether Plaintiff was injured as a result of the negligence of an employee of Defendant?
 b. If so, what if any damages is Plaintiff entitled to recover from Defendant under the Torts Claims Act?
 c. Whether Plaintiff's negligence is a bar to his recovery?
7. The exhibits that were admitted at the hearing before the Deputy Commissioner are as follows:
 a. Plaintiff's #12(a), pictures of stage;
 b. Plaintiff's #13, pictures of Plaintiff's injuries;
 c. Plaintiff's #14, pictures of Plaintiff's family activities;
 d. Plaintiff's #18, list of Plaintiff's medical bills and providers;
 e. Plaintiff's #25, Plaintiff's medical records;
 f. Plaintiff's #9, Lehman's CV;
 g. Plaintiff's #4, manufacturer's owner's manual for stage;
 h. Plaintiff's #12(b), warnings;
 i. Plaintiff's #26, Plaintiff's DVD of building and stage;
 j. Plaintiff's #24, part of code;
 k. Plaintiff's #16, Dr. Allen's deposition;
 l. Plaintiff's #17, Dr. Allen's response to 3/1/06 letter from Plaintiff's attorney; *Page 4 
 m. Plaintiff's #16(b), Dr. Allen's CV;
 n. Plaintiff's #10, William Vigilante's deposition;
 o. Plaintiff's #11, William Vigilante's CV;
 p. Plaintiff's #3, rental agreement;
 q. Defendant's #1, e-mail from Oxendine of 2/27/03;
 r. Defendant's #2, invoice for back rails;
 s. Defendant's #3, Howard's CV;
 t. Defendant's #4, Building Code, 2002 Edition, Section 410;
 u. Defendant's #5, Building Code, 2002 Edition, Section1001;
 v. Defendant's #6, Almekinders' deposition;
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On January 24, 2006, Plaintiff filed an Industrial Commission Form T-1Affidavit with the North Carolina Industrial Commission alleging damages as a result of the alleged negligence of Ricky Oxendine and Michael Smith, both employees of Defendant. Plaintiff alleged that he was injured when Mr. Oxendine and Mr. Smith allowed to exist a "latent defect and hidden dangerous condition" with a stage erected at the Southeastern North Carolina Agriculture Center located in Lumberton, North Carolina. Plaintiff also alleged that Mr. Oxendine and Mr. Smith were negligent when they failed to properly supervise and ensure that the stage in question was erected within the applicable industry standards.
2. On April 10, 2006, Defendant denied negligence and asserted affirmative *Page 5 
defenses, including contributory negligence on the part of Plaintiff.
3. On February 18, 2003, Plaintiff attended a political event in support of the Lumbee Federal Recognition and the Federal Tobacco Buyout at the Southeastern Agricultural Center on Highway 74 in Lumberton, Robeson County, North Carolina. An estimated 750 people were present to hear Senator Elizabeth Dole, Representative Mike McIntyre, and others speak. Plaintiff arrived at the event between 6:30 p.m. and 6:45 p.m. The event started around 7:00 p.m.
4. Prior to the event, Mr. Ricky Oxendine, the manager of the Agriculture Center, was contacted by David Stephenson and Gary Powers of S P Tobacco Marketing to rent the Agriculture Center for Senator Dole and Representative McIntyre. Mr. Oxendine agreed to lease the Agriculture Center to them. As a part of the agreement a stage was to be put in place. Mr. Oxendine was not at the Center during the event.
5. Defendant only provides the facility for the event and does not assume any responsibility for what happens during the event. In addition, Defendant's employees were not responsible for the activities of the promoters or attendees during the actual event or for crowd control or security during the event. Defendant's staff is provided for pre and post event clean-up.
6. On February 18, 2003, the staff of the Agricultural Center had erected a stage to be occupied by a select few distinguished guest speakers. There were to be approximately six to seven speakers on stage. The event presenters did not inform Defendant that anyone other than the speakers would be on the stage and did not request that rails be installed on the stage.
7. On the stage was a podium and table and chairs for the speakers for the event. The height of the stage was set at 30 inches. The staff installed steps to allow the speakers to go *Page 6 
up onto the stage. There were side rails placed on the steps. There was a screen that was located above the rear of the stage that extended from the ceiling and had been pulled down to serve as a back drop.
8. Mr. Tommy Rogers, an employee of Defendant, assisted with the set-up of the stage for the February 18, 2003 event. Mr. Rogers noted that after the room was fully prepared for the event, the screen had not been pulled down. Some time between the point when the staff completed setting up the stage and the start of the event, someone pulled the screen down at the rear of the stage. It was believed by the witnesses that the screen was pulled down to hide the large roll up door directly behind the stage. The movie screen behind the stage was a different color than the walls and there were visible gaps between the screen and the wall.
9. Mr. Oxendine, the manager of the Agriculture Center, did not instruct any person to lower the screen. The greater weight of the evidence does not show that the movie screen was pulled down by any of Defendant's staff upon the completion of setting up the stage and area for the guests.
10. Mr. Rogers testified that the stage was set up in the normal manner, which did not include any side or back rails. At the time of this event there were not any side or back rails to install. The stage was set up in the center of the event area and directly to the rear of the stage was a large roll-up door. The stage was located away from any walls either to the side or rear, and the wall to the rear of the stage was approximately eight to 10 feet behind the stage.
11. When the stage that was used for the February 18, 2003 event was purchased by Defendant, it did not come with rails to go around the sides or back. Therefore when the stage was set up, the staff did not place any rails around the sides or back. *Page 7 
12. During the event, the room was well lit, and there were between six to seven people seated on the stage. Plaintiff was seated facing the stage at a table directly in front of the stage. Plaintiff had an unobstructed view of the entire stage including an unobstructed view of the areas to the right, left, and rear of the stage.
13. After the speakers were finished with their speeches, the presenters of the event invited the audience to come onto the stage to meet the speakers. Defendant's employees were not presenters, speakers, or participants at this event. Thereafter Plaintiff voluntarily walked up onto the stage to meet the speakers. Plaintiff was with one of the first group of people to walk onto the stage. While on stage there were five to eight people in front of him.
14. As plaintiff left his table to get onto the stage, he went to the right of the stage and walked up the stairs located on the right of the stage. He then walked down to the opposite end of the stage and talked to various people. The stage was not crowded while Plaintiff was on the stage, and Plaintiff's view was unobstructed as he walked across. Plaintiff did not have any trouble walking across the stage to meet the speakers.
15. While on the stage, after Plaintiff met and spoke with the various speakers, Plaintiff turned to his right toward the back of the stage to walk back across the stage to exit. As Plaintiff walked toward the stairs, Plaintiff was not paying attention and lost his balance and fell off the back of the stage, landing on his left hip. Plaintiff was not pushed or bumped off of the stage. Plaintiff simply lost his balance. After he fell, Plaintiff was pulled back onto the stage. Plaintiff then went down the stairs and exited the stage. Plaintiff left the event soon after.
16. Although Plaintiff recognized that the screen would not support his weight, Plaintiff reached out to place his hand on the screen that had been pulled down behind the stage in an effort to catch himself while falling. *Page 8 
17. The stage came with a manufacturer's manual which indicated that when the stage was erected that guard rails should be placed and secured on the sides and back of the stage. Also, the sections of the stage had labels indicating that the manual instructions should be followed and indicated the need for rails. When Defendant purchased the stage, rails did not come with it.
18. Mr. James Howard is an expert in general safety and code compliance. Mr. Howard testified that the North Carolina Building Codes was the applicable standard in this case for temporary stages as to what was necessary for the safety of the stage. Under the Code it indicates that rails are not required for any structure that is 30 inches or less off of the floor. Stages that are 31 inches or higher may require guardrails. However, the stage at issue in this case was only 30 inches. Mr. Howard testified that the manufacturer's guidelines were not the applicable standard of care, and the guidelines provided by the manufacturer were to shield the manufacturer from any potential product liability claims.
19. Plaintiff offered Mr. Karl Lehman as an expert. Mr. Lehman was a general contractor and he was of the opinion that Defendant should have placed rails on the stage when it was erected. He noted that he was aware that the manufacturers sold this and other similar stages without rails even though its manual indicated that rails should be used. Mr. Lehman also indicated that the way the stage was set up on the date of this accident, there were no violations of any standards. Mr. Lehman also noted that upon his inspection of the stage, that there was a gap between the walls and the sides of the screen and the walls were a different color from the screen.
20. The Full Commission gives greater weight to the testimony of Mr. Howard than Mr. Gibbs. *Page 9 
21. As a result of his fall, Plaintiff was seen and treated for his injuries by Moore Regional Hospital, Dr. Mark Brenner, and Dr. David Allen. Plaintiff's condition was diagnosed as left hip contusion, degenerative disc disease, and left knee pain.
22. There had been no prior incidents involving anyone falling off of this stage before Plaintiff's fall on February 18, 2003.
23. Mr. Michael Smith, who Plaintiff named as a negligent employee of Defendant, began working for Defendant approximately 10 days after Plaintiff fell off the stage. Mr. Smith was hired as a marketing specialist and had little to no involvement with the management of special events. Mr. Smith did not have any personal knowledge of the events surrounding Plaintiff's claim for negligence.
24. Defendant had a duty to erect the temporary stage in accordance with the North Carolina Building Codes. Plaintiff has failed to show that an employee of Defendant breached a duty owed to him. Therefore, there is insufficient evidence to show that Defendant or its named employees were negligent. Plaintiff has failed to prove negligence on the part Defendant.
25. Even if Plaintiff had shown that Defendant breached a duty owed to him, Plaintiff's own negligence contributed to his injury.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 143-291(a) confers upon the North Carolina Industrial
Commission jurisdiction to hear negligence claims against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State. Under *Page 10 
the Tort Claims Act, "negligence is determined by the same rules as those applicable to private parties." Bolkhir v. N.C. StateUniv., 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988).
2. In order to recover on a civil claim for negligence a claimant must prove (1) the existence of a duty to him; (2) a breach of that duty by the defendant (the named employees thereof in a tort claim); (3) injury sustained; and (4) as a proximate result of the breach of duty. Pulley v. Rex Hosp.,326 N.C. 701, 392 S.E.2d 380 (1990). Plaintiff has failed to prove any negligence on the part of any of Defendant's named employees.
3. Even if Plaintiff had proven that Defendant was negligent, which he did not, a claimant whose negligence has contributed to his injury cannot recover under the Tort Claims Act. N.C. Gen. Stat. §§ 143-291; 143-299.1; Crawford v. Wayne Co.Bd of Educ., 275 N.C. 354, 168 S.E.2d 33 (1969).
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for damages under the North Carolina Tort Claims Act is hereby DENIED.
2. Each side shall bear its own costs.
This the 21st day of March 2011.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
S/___________________ LINDA CHEATHAM COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION:
S/___________________ CHRISTOPHER SCOTT COMMISSIONER