***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Houser.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Order, which was admitted into the record and marked as Stipulated Exhibit (1) as:
 STIPULATIONS *Page 2 
1. The Commission has jurisdiction over the parties and the subject matter of this action and all parties are properly before the Commission.
2. The accident, which is the subject of this action, occurred on November 23, 2004 on Kenilworth Avenue at the intersection of Independence Boulevard in Charlotte, North Carolina.
3. At all relevant times, Ray Jamal Dukes was an employee of the Charlotte-Mecklenburg Board of Education and was operating a school bus owned by the Charlotte-Mecklenburg Board of Education within the course and scope of his employment.
4. At the hearing, the parties submitted the video (DVD) deposition of Dr. Robert Lee Jones, Jr. and the transcript thereof, which was admitted into the record and marked as Stipulated Exhibit (2).
 *********** ISSUES
1. Whether Plaintiff was injured or damaged as a result of the negligence of Mr. Ray Jamal Dukes?
2. To what amount, if any, is Plaintiff entitled to recover for her injuries?
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On November 23, 2004, Plaintiff was driving her 2002 Toyota automobile along Kenilworth Avenue approaching Independence Boulevard. As Plaintiff was doing so, a 1998 Lexus automobile driving directly in front of her in the same lane and direction came to a *Page 3 
complete stop. This was due to an ambulance with its lights and sirens activated having entered Kenilworth Avenue traveling the wrong way on the exit ramp to Independence Boulevard. Plaintiff brought her automobile to a complete stop behind the Lexus.
2. After Plaintiff came to a stop behind the Lexus, a collision occurred involving four vehicles, including Plaintiff's automobile, Defendant's school bus driven by Mr. Ray Jamal Dukes, a City of Charlotte bus driven by Mr. Henry Minnet, and the Lexus driven by Ms. Emily Thyen.
3. There are alternate theories as to exactly how the collision transpired. Plaintiff contends that after she came to a stop behind the Lexus, Defendant's school bus was unable to stop before colliding into the rear of her automobile. Next, Plaintiff contends that, just after Defendant's school bus collided with the rear of her automobile, the city bus collided with the rear of Defendant's school bus, resulting in Defendant's school bus being pushed into the rear of Plaintiff's automobile a second time. As a result of these impacts, Plaintiff and her automobile were pushed forward into the rear of the Lexus automobile.
4. Defendant, however, contends that, after Plaintiff came to a stop behind the Lexus, its school bus also came to a complete stop, but was then impacted by the city bus thereby causing its bus to collide with Plaintiff's automobile. Defendant contends that, pursuant to its theory, Defendant it is not liable to Plaintiff under the Tort Claims Act.
5. In support of its theory, Defendant presented the testimony of Mr. Dukes, the driver of its school bus. Mr. Dukes testified that he saw and heard the ambulance approach Kenilworth Avenue traveling the wrong way on the exit ramp from Independence Boulevard, and that he applied the brakes as the school bus approached Plaintiff's vehicle. Mr. Dukes further testified that he successfully stopped Defendant's school bus, but that the city bus *Page 4 
traveling behind him collided with the rear of the school bus, pushing the school bus into the rear of Plaintiff's automobile. Additionally, Mr. Dukes testified that he felt only one collision between Defendant's school bus and Plaintiff's automobile, and that this collision occurred as a result of the city bus colliding with the rear of the school bus.
6. Regarding the information he provided to others about how the accident occurred, Mr. Dukes testified that he gave a statement to Charlotte-Mecklenburg transportation specialist, Mr. Cecil Mitchell, on a Form TD25 that "the first car stopped and the 2nd car hit the first car then the CATS city bus hit me in the rear." Additionally, Mr. Dukes testified that he told the investigating officer, D.M. Mullis, that he "could not recall if vehicle number 2 (Plaintiff's vehicle) had already struck vehicle number 4." However, on cross-examination, Mr. Dukes admitted that his description of the accident in his pre-trial Interrogatory responses was different from what he provided on the Form TD25 and the Department of Motor Vehicle (DMV) 349 Report.
7. Defendant also presented the testimony of Officer Mullis in support of its position. Officer Mullis testified that he recalled there being only one collision between Defendant's school bus and Plaintiff's automobile. Officer Mullis further testified that the city bus pushed Defendant's school bus into Plaintiff's automobile.
8. Officer Mullis also testified, however, that he did not have any independent recollection of the accident and that the information he recalled was contained in the DMV-349 Report, and in particular, the narrative contained therein. Officer Mullis testified that he memorialized Mr. Dukes' statements to him at the accident scene when he noted on the DMV-349 report, "Driver of vehicle number 3 stated that vehicle number 2 made an abrupt stop in front of him when he collided into the rear of vehicle number 2, as vehicle number 1 collided *Page 5 
into the rear of his vehicle." Officer Mullis also indicated that he memorialized Plaintiff's statement given at the accident scene which read, "She stopped behind vehicle number 4, who stopped for a medic unit that entered Kenilworth Av. from Independence Blvd. exit when vehicle number 3 struck the rear of her vehicle pushing her into vehicle number 4."
9. In light of the competing theories set forth above, it is crucial that in Plaintiff's statement, Officer Mullis wrote that Plaintiff described being "pushed" into the Lexus automobile in front of her as opposed to the language used in his written description of Mr. Dukes' statement in which he wrote that Mr. Dukes reported having "collided" with the rear of Plaintiff's automobile.
10. Officer Mullis also testified that Mr. Dukes exceeded a safe speed for the conditions on the day of the accident. The DMV-349 Report indicated that the conditions were rainy and cloudy.
11. Based upon the totality of the credible evidence of record, particularly the descriptive words memorialized on the DMV-349 Report, the undersigned give greater weight to the testimony and description of the accident given by Plaintiff than the testimony and descriptions given by other witnesses.
12. On November 23, 2004, by and through its employee, Mr. Dukes, Defendant owed a duty to Plaintiff to operate its school bus in a reasonably safe manner.
13. On November 23, 2004, by and through the actions and inactions of its employee, Mr. Dukes, Defendant breached its duty of care owed to Plaintiff and was therefore, negligent.
14. Defendant's negligence on November 23, 2004, by and through its employee, Mr. Dukes, was the proximate cause of the motor vehicle accident involving Plaintiff which resulted in sustained damages. *Page 6 
15. Plaintiff's vehicle sustained significant damages rendering it not drivable from the scene. Plaintiff's vehicle was towed to Eastway II wrecker yard. Plaintiff's vehicle was repairable and the repairs have been performed and have been paid.
16. Plaintiff was taken from the scene of the accident by ambulance for treatment at Carolinas Medical Center. Plaintiff followed up with her primary care physician's office, CMC-Eastland Family Practice, where her treatment was overseen primarily by Dr. Robert Lee Jones. Dr. Jones testified on April 29, 2009 at a video (DVD) deposition.
17. Plaintiff was diagnosed by CMC-Eastland Family Practice as having a lumbosacral strain, a cervical strain, and a trapezius muscle strain secondary to the November 23, 2004 motor vehicle accident.
18. Plaintiff was held out of work by her primary care physician's office from November 23, 2004 through December 3, 2004, resulting in lost wages in the amount of $834.56.
19. Plaintiff was also referred by her family practice to physical therapy at Carolinas Medical Center. Plaintiff underwent physical therapy from December 10, 2004 until April 4, 2005 at Carolinas Medical Center.
20. Following her course of physical therapy, Plaintiff was referred by Dr. Jones to Southeast Pain Management and Dr. Paul J. Jaszewski. At that facility, Plaintiff was diagnosed with myofascial pain syndrome and Dr. Jaszewski concluded that treatment from a chiropractor would be beneficial.
21. Plaintiff subsequently underwent chiropractic treatment at Matthews Chiropractic Clinic with Dr. John Hanna until September 21, 2005.
22. Dr. Hanna testified at the hearing that Plaintiff sustained multiple injuries as a result of the November 23, 2004 accident, including, but not limited to acute cervical *Page 7 
subluxation, acute sacral subluxation, myospasms and myofascitis. Dr. Hanna also testified that the treatment he administered was reasonable and necessary. Finally, Dr. Hanna testified to a reasonable degree of chiropractic certainty that the injuries Plaintiff sustained were more likely than not causally related to the motor vehicular accident of November 23, 2004.
23. On September 26, 2005, more than ten (10) months after the accident, Plaintiff was examined and released by Dr. Jones.
24. Dr. Jones, through his deposition testimony, reviewed all records from other providers identified on Plaintiff's Exhibit (21), with the exception of Dr. John Hanna, who testified as to his own treatment. Pursuant to Rule 703 of the North Carolina Rules of Evidence, Dr. Jones provided a professional expert opinion that the treatment administered to Plaintiff from those medical providers was reasonable and necessary. Likewise, Dr. Jones opined that the treatment by CMC-Eastland Family Physicians was reasonable and necessary. Finally, Dr. Jones concluded to a reasonable degree of medical certainty that the injuries Plaintiff sustained were more likely than not caused by the accident of November 23, 2004.
25. Plaintiff sustained $21,799.52 in damages consisting of medical expenses, lost wages and prescription costs. Of the $21,799.52 in damages, medical expenses totaled $20,919.55, lost wages totaled $834.56 and prescription costs totaled $45.41.
26. Prior to the hearing, Plaintiff reached a settlement agreement with the City of Charlotte, Transit Management of Charlotte, Inc. as a result of the joint and concurring negligence of the operator of the City of Charlotte bus driver, Mr. Minnet.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the undersigned concludes as follows: *Page 8 
 CONCLUSIONS OF LAW
1. Plaintiff filed her action pursuant to the Tort Claims Act, which allows persons to sue state departments or agencies for injuries caused by the negligence of state employees. Under the provisions of the Tort Claims Act, negligence is determined by the same rules as apply to private parties. Bolkir v. N.C. StateUniversity, 321 N.C. 706, 365 S.E.2d 898 (1988). The terms of the Tort Claims Act must be strictly construed. NorthwesternDistributors, Inc. v. DOT,41 N.C. App. 548, 255 S.E.2d 203, cert. denied,298 N.C. 567, 261 S.E.2d 123 (1979). To recover, the plaintiff must show that the injuries sustained were the proximate result of a negligent act, by the named state employee, acting within the course and scope of his employment. N.C. Gen. Stat. § 143-291, etseq.
2. In order to recover on a civil claim for negligence, the plaintiff must prove (1) existence of a duty to her; (2) a breach of that duty by the defendant (the named employee thereof in the tort claim); (3) an injury sustained; (4) as a proximate result of the breach of duty. Pulley v. Rex Hospital,326 N.C. 701, 392 S.E.2d 380 (1990).
3. On November 23, 2004, by and through its employee, Mr. Dukes, Defendant owed a duty to Plaintiff to operate its school bus in a reasonably safe manner. N.C. Gen. Stat. § 143-291, et seq.;Pulley v. Rex Hospital, 326 N.C. 701, 392 S.E.2d 380 (1990).
4. On November 23, 2004, by and through the actions and inactions of its employee, Mr. Dukes, Defendant breached its duty of care owed to Plaintiff and was therefore, negligent. N.C. Gen. Stat. § 143-291, et seq.; Pulley v. RexHospital, 326 N.C. 701, 392 S.E.2d 380 (1990).
5. Defendant's negligent operation of its school bus on November 23, 2004 was the proximate cause of Plaintiff's motor vehicle accident and of her related sustained damages. N.C. Gen. Stat. § 143-291, et seq.; Pulley v. RexHospital, 326 N.C. 701, 392 S.E.2d 380 (1990). *Page 9 
6. There were no actions, or inactions on the part of Plaintiff that constituted contributory negligence in relation to the accident which occurred on November 23, 2004. N.C. Gen. Stat. § 143-291, et seq.
7. As the result of Defendant's negligence, Plaintiff is entitled to be paid by Defendant for damages she sustained in the amount of $50,000.00. N.C. Gen. Stat. § 143-291, et seq.
8. Defendant's negligent operation of its school bus was joint and concurring with the operator of the City of Charlotte bus driver Mr. Minnet, and prior to the hearing in this matter, Plaintiff reached a settlement agreement with those parties. Therefore, Defendant is entitled to a credit for the stipulated amount of $20,000.00 against the amount of damages awarded herein. N.C. Gen. Stat. §§ 143-291, et seq.; 1B-4.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission makes the following:
 AWARD
1. Defendant shall pay the sum of $50,000.00 to Plaintiff as compensation for the damages she sustained as the proximate result of its negligence. This amount is subject to the credit in Defendant's favor awarded herein.
2. Defendant is entitled to a credit for the stipulated amount of $20,000.00 against the amount of damages awarded herein.
3. Defendant shall pay the costs of $934.50, including the Industrial Commission filing fee of $109.00, and those costs associated with the video (DVD deposition of Dr. Jones and the transcript thereof. *Page 10 
This the 26th day of April 2010.
 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ DANNY L. McDONALD COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER