***********
The Full Commission has reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Donovan, and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence. Having reviewed the competent evidence of record, the Full Commission reverses the Decision and Order of Deputy Commissioner Donovan.
 *********** EXHIBITS
The following exhibits were received into evidence by the Deputy Commissioner:
1. Stipulated Exhibit #1: Judgment and Commitment, Plaintiff's Discovery Responses, Grievance Administrative Remedy Procedure, Medical Records, History *Page 2 
2. Plaintiff's Exhibit #1: Inmate Letter
3. Plaintiff's Exhibit #2: Diagram
4. Plaintiff's Exhibit #3: Incident Statement
5. Plaintiff's Exhibit #4: Medical Notification Slip
6. Plaintiff's Exhibit #5: Radiology Reports
7. Plaintiff's Exhibit #6: Medical Records
8. Plaintiff's Exhibit #7: Sick Call Appointment Requests
9. Plaintiff's Exhibit #8: Medical Records
10. Plaintiff's Exhibit #9: Health Screening Form
11. Plaintiff's Exhibit #10: Medical Records
12. Plaintiff's Exhibit #11: D.O.C. Consultation/Referral Forms
13. Plaintiff's Exhibit #12: Problem List
14. Plaintiff's Exhibit #13: Medical Records
15. Plaintiff's Exhibit #14: Medication Dispensary Forms
16. Plaintiff's Exhibit #15: Medical Records
17. Plaintiff's Exhibit #16: Medical Records
18. Plaintiff's Exhibit #17: Correspondence (allowed to show contact, not to demonstrate corroboration of testimony)
19. Plaintiff's Exhibit #18: Correctional Service Contract (allowed with Protective Order herein attached)
20. Plaintiff's Exhibit #19: Sick Call Request Form
 *********** ISSUE *Page 3 
Did Plaintiff suffer personal injuries as a result of the negligence of employees or agents of Defendant on February 19, 1999?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on January 27, 1960. On January 27, 1997, Plaintiff was convicted of First-Degree Murder and placed in the custody of Defendant. On February 18, 1999, Plaintiff was transferred from Defendant's Marion County facility to Mountain View Correctional Institute in Mitchell County, North Carolina. At that time, the Mountain View Facility was operated by Corrections Corporation of America pursuant to a contract with Defendant.
2. On February 18, 2002, Plaintiff filed an Industrial Commission Tort Claim Affidavit alleging that he was injured by Sergeant Dula while incarcerated at Mountain View Correctional Center. Plaintiff alleges that on February 19, 1999, at 9:00 a.m., Sergeant Dula handcuffed him too tightly, resulting in a large knot and visible injury to his left wrist.
3. There was no credible evidence presented by Plaintiff on the proper policy and procedure for placing handcuffs. Likewise, Plaintiff offered no expert testimony regarding the proper application of handcuffs.
4. On January 14, 1999, Plaintiff complained of left arm and left hand numbness which was one of his complaints following the alleged February 19, 1999 incident. As a result of these complaints, Plaintiff was treated at Valdese Emergency Room. *Page 4 
5. On February 19, 1999, at 9:50 a.m., Plaintiff was examined by Nurse Sandy McClellan. Plaintiff's handcuffs were removed for the examination. During Nurse McClellan's examination, she observed no injury, laceration, hematoma, abrasion, or burn to Plaintiff. After her examination, Ms. McClellan opined that no first aid was necessary, nor was it necessary for Plaintiff to see a physician.
6. On February 19, 1999, Nurse McClellan performed a pre-segregation health evaluation on Plaintiff at 10:00 a.m. As part of that evaluation, Nurse McClellan once again examined Plaintiff's wrist area. Nurse McClellan again noted no injury, laceration, contusion, or bruising. Plaintiff's upper extremities were normal, and he had no complaints of numbness. Nurse McClellan opined that handcuffs placed too tightly on an inmate would leave a visibly reddened area.
7. At 10:30 a.m., it was noted in Plaintiff's records that Plaintiff had a slight raised area about his wrist and a slight cut across the top of his wrist, with no other redness or marks being noted. It is not known who wrote this entry; however, it was not written by Nurse McClellan.
8. Subsequent to this alleged incident, Plaintiff was asked to document his injuries on paper. Plaintiff's drawing indicated swelling in one finger and his thumb along with a knot on the side of his left wrist, which was later determined to be a ganglion cyst. On that drawing, Plaintiff marked that his pain originated from the area that was determined to be a ganglion cyst. Plaintiff did not designate any abrasions or cuts in his drawing. However, Plaintiff testified that once the handcuffs were taken off an hour after the alleged incident, his wrist was swollen and black and blue with what looked like teeth marks going around his wrist. Plaintiff's drawing is inconsistent with his description of his injuries. *Page 5 
9. On February 27, 1999, while at Mountain View Correctional Center, Plaintiff filed a grievance alleging that Sergeant Dula handcuffed him so tightly that it caused a cut, a huge knot, and his left hand to go numb. Plaintiff's grievance was investigated by B. J. Bennett, an Inmate Grievance Examiner. After reviewing Plaintiff's grievance and responses to the grievance, Ms. Bennett concluded that the handcuffs were applied "correctly," were not too tight, and were double-locked. Ms. Bennett also concluded that the knot on Plaintiff's wrist appeared to be an old wound, and that Plaintiff exhibited no injury, laceration, bruise, or contusion when he was examined after this alleged incident. Ms. Bennett further concluded that Plaintiff received appropriate medical care.
10. Plaintiff retained counsel three to four months after his alleged injury; however, he took no action to appeal the decision of the Administrative Remedy Procedure which was issued after the retention of counsel.
11. On February 23, 1999, Plaintiff submitted a Sick Call Appointment Request, and was examined by medical personnel the next day. The medical report notes slight discoloration, swelling over the left thumb and first finger, edema, a knot on the left wrist, and two red streaks or marks which Plaintiff said were from handcuffs. The report also notes that Plaintiff was complaining of pain when moving his hand or thumb. Plaintiff was referred for an evaluation by a physician and was given a wrist splint and Ace wrap. He was advised to keep his hand elevated, to use warm compresses, and not to use the hand until seen by the physician.
12. Throughout 1999 and 2000, plaintiff continued to file Sick Call Appointment Requests relating to pain in his left wrist and thumb. Plaintiff was referred for a nerve conduction EMG that was performed on July 29, 1999. The report for this procedure identifies the procedure as a study of the left arm for pain and numbness in the arm radiating into the left hand *Page 6 
and thumb. Plaintiff had not complained of left arm pain. It was concluded that the arm study was normal, but that it was feasible that a small branch of the median nerve had been injured but could not be measured.
13. Plaintiff eventually underwent surgery for a ganglion cyst on his left wrist, performed by Dr. Frazier at Valdese General Hospital on February 7, 2000.
14. Plaintiff testified that the ganglion cyst popped up on the day of the alleged incident; however, the Full Commission finds based upon the greater weight of the medical evidence and medical testimony that the ganglion cyst was not related to the handcuffing on February 19, 1999.
15. The Full Commission finds that Sergeant Dula was not negligent and that Sergeant Dula exercised due care in carrying out his duties as a correctional officer.
16. Dr. Stover is Board Certified in the field of family medicine, and has dealt extensively with pain management issues and spent a great deal of time in the field of plastic surgery. Further, as part of his primary care practice, Dr. Stover treats patients with nerve injuries and patients' skin injuries and skin complaints. Dr. Stover opined that Plaintiff's claims of wrist injury, due to Sergeant Dula's actions, are not credible.
17. Dr. Stover opined that had Plaintiff sustained an injury as described by Plaintiff, he would have exhibited a considerable amount of obvious injury to the skin and underlying tissue, which would have remained evident for some period of time. Dr. Stover testified that there would be significant bruising, lacerations, indentation of the skin, creasing of the skin, and swelling, which would take several hours to a day or two to resolve. When Plaintiff presented after the handcuffs were removed, none of the symptoms existed. *Page 7 
18. Based on Dr. Stover's review of Plaintiff's medical records, which included the nerve conduction study and the depositions taken in this case, Dr. Stover opined that it was reasonable to assume that Plaintiff had some superficial damage to the superficial radial nerve, which is purely sensory, and which relays pain, touch and feeling in the back of the hand.
19. According to Dr. Stover, an injury to the radial nerve would not cause pain to the inside of Plaintiff's hand. As such, the vast majority of Plaintiff's alleged injuries cannot be attributed to the alleged acts of Sergeant Dula.
20. Dr. Stover opined that Plaintiff's superficial radial nerve injury is not related to the alleged injury by handcuffs and that it was, more likely than not, caused by another incident. One possible cause of this injury was a motor vehicle accident that Plaintiff was involved in prior to his incarceration where he injured the left side of his body, including his left shoulder.
21. On July 29, 2009, Plaintiff underwent a nerve conduction study by Dr. Dale Menard, which concluded that Plaintiff did not suffer from any radiculopathy, neuropathy, or carpal tunnel. The test also concluded that Plaintiff's pain may not be a nerve related injury.
22. Neither the medical records, nor the credible evidence, support Plaintiff's version of events. Dr. Stover opined that it requires a considerable amount of force to cause the kind of injury complained of by Plaintiff, or it requires a lot of repeated trauma over a long period of time.
23. Plaintiff was examined twice by Nurse McClellan after the alleged incident and again by a physician several days later. Neither found any significant evidence of damage to the overlying soft tissues that would be consistent with the kind of force required to cause injury to the superficial radial nerve.
24. Dr. Stover opined that it is highly likely that Plaintiff's symptoms are not from any single event but from multiple events that have occurred over the last 15 to 20 years. *Page 8 
25. Dr. Westly, although Board-Certified in orthopedic surgery, conducted an IME for Plaintiff on October 31, 2007, eight and a half years after the alleged incident. He did not review any of Plaintiff's records prior to December of 2000. He repeatedly testified that the cause of Plaintiff's injuries were "probably" or "possibly" related to Plaintiff's allegations.
26. Dr. Westly testified that in addition to the nerve conduction study, x-rays of Plaintiff's left wrist were normal with no evidence of any specific bone, joint, or soft tissue abnormality demonstrated. Dr. Westly could not associate any altered sensibility in the tip of the thumb with the presence of injury or neuroma to the radial nerve at the wrist.
27. Dr. Westly stated it was possible that if Plaintiff struggled with his cuffs, it could have caused problems with the radial sensory nerve.
28. Dr. Lacy Eugene Thornburg, an expert in the field of orthopaedics, conducted an IME on Plaintiff on January 19, 2010, approximately 11 years after Plaintiff's alleged injury. Dr. Thornburg was not aware that Plaintiff had prior gunshot wounds or that he had seven surgeries as a result of those wounds.
29. Dr. Thornburg testified that the fact that Plaintiff had a propensity to bruise, was on certain medications, or had scar tissue as a result of seven operations and gunshot wounds could cause nerve damage and that Plaintiff was having the same type of problems involving his left hand prior to his alleged injury on January 14, 1999. As part of his assessment, Dr. Thornburg, saw no evidence of injury to Plaintiff's median nerve.
30. Dr. Thornburg and Dr. Westly agree that something happened to Plaintiff's wrist; however, they were not able to say when it happened or what caused it.
31. Dr. Stover testified that Plaintiff does not need pain medications and has not prescribed pain medications since January of 2010. *Page 9 
32. Plaintiff does have other medical issues such as back pain and other problems associated with his gunshot wounds that are not related to this alleged injury.
33. Dr. Thornburg testified that there were three different potential surgical procedures that may help Plaintiff; however, each procedure carried only about a 50% success rate. He also indicated that these procedures may also have no effect at all or could make it worse. No costs were provided for any of these procedures.
34. The Full Commission gives Dr. Stover's opinions greater weight than Dr. Westly and Dr. Thornburg, in the area of pain management and also as to diagnostic opinions regarding Plaintiff's skin and superficial radial nerve. Dr. Westly and Dr. Thornburg are orthopedic surgeons. Both Dr. Westly's and Dr. Thornburg's testimony fail to satisfy the burden of proof required by Plaintiff. Therefore, Plaintiff failed to prove that any breach of any duty was the proximate cause of Plaintiff's alleged injury to his left wrist.
35. The Full Commission finds that Plaintiff's testimony is not credible, is inconsistent, and is contrary to the medical evidence.
36. Plaintiff failed to produce any credible evidence that Sergeant Dula or any other employee of Defendant breached a duty owed to Plaintiff or that any alleged breach was the proximate cause of Plaintiff's left wrist symptoms. Therefore, Plaintiff has failed to meet his burden of proving negligence.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 10 
1. N.C. Gen. Stat. § 143-291(a) confers the Industrial Commission with jurisdiction to hear tort claims against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State.
2. Under the provisions of the Tort Claims Act, negligence is determined by the same rules applicable to private parties.Bolkhir v. N.C. State Univ.,321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988).
3. Plaintiff must show that the injuries sustained were the proximate result of a negligent act of a named state employee acting within the course and scope of his employment. N.C. Gen. Stat. § 143-291. The terms of the Tort Claims Act must be strictly construed. Northwestern Distrib., Inc. v. N.C. Dep't ofTransp., 41 N.C. App. 548, 255 S.E.2d 203, cert. denied,298 N.C. 567, 261 S.E.2d 123 (1979).
4. In order to recover on a civil claim for negligence, Plaintiff is required to prove (1) the existence of a duty to him; (2) a breach of that duty by Defendant (the named employees thereof in the tort claim); (3) sustained injury; (4) which was the proximate result of the breach of duty. Pulley v. Rex Hosp.,326 N.C. 701, 704-05, 392 S.E.2d 380, 383 (1990).
5. Plaintiff has failed to prove that a named employee of Defendant breached a duty owed to Plaintiff or that the alleged breach resulted in injury to Plaintiff's left wrist. Id.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim under the State Tort Claims Act is hereby DENIED
2. Each side shall bear its own costs. *Page 11 
This the 1st day of September, 2011.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/_____________ DANNY L. McDONALD COMMISSIONER
 S/_____________ TAMMY R. NANCE COMMISSIONER *Page 1